**CONSOLIDATED RAIL CORP., et al., Plaintiffs,**

v.

**Dennis SMITH, et al., Defendants.**

**CHESAPEAKE & OHIO RAILWAY CO., Plaintiff,**

v.

**CITY OF LaPORTE, Defendant.**

**CHESAPEAKE & OHIO RAILWAY CO., Plaintiff,**

v.

**CITY OF MICHIGAN CITY, Defendant.**

Cause Nos. S85–89, S85–661 and S86–214.

United States District Court, N.D. Indiana, South Bend Division.

April 30, 1987.

Harold Abrahamson, Hammond, Ind., for Consolidated Rail Corp., et al.

Donald E. Baugher, LaPorte, Ind., for Smith, et al.

Gilbert F. Blackmun, Leonard M. Holajter, Highland, Ind., Sally J. Kircher, Cleveland, Ohio, for Chesapeake & Ohio Ry.

Donald W. Pagos, Deputy City Atty., Michigan City, Ind., for the City of Michigan City.

MILLER, District Judge.
### MEMORANDUM and ORDER

The plaintiff railroad corporations' summary judgment motions in these actions present the common issue of whether federal law preempts municipal ordinances regulating train speeds within the Indiana cities of LaPorte and Michigan City, rendering the ordinances void under the Supremacy Clause of the United States Constitution, Art. VI, Cl. 2. For convenience and economy of administration, this single

memorandum addresses the identical legal issues raised in these three actions. See Fed.R.Civ.P. 42(a).

The court concludes (1) that it has jurisdiction over these cases; (2) that in light of the nature of the challenges to the Ordinances, the plaintiffs need not exhaust their state remedies; (3) that abstention is not warranted; (4) that federal law preempts the field of train speed regulations so as to preclude any attempt by Indiana to delegate to municipalities the power to set train speed regulations; and (5) that, accordingly, the Ordinances are null and void.

## I. PROCEDURAL POSTURE

### A. LaPorte Ordinance

Plaintiffs Consolidated Rail Corporation ("Conrail") and National Railroad Passenger Corporation ("Amtrak") filed their original complaint in Cause No. S85–89 on January 29, 1985, naming as defendants three members of the City of LaPorte Board of Public Works.[1] Conrail and Amtrak alleged that they run daily freight and passenger trains through the City of LaPorte.

In 1952, the City of LaPorte enacted an ordinance that provided, "It shall be unlawful for any person to run a locomotive or steam railway car at a greater speed than fifteen miles per hour within the city." City of LaPorte's Municipal Ordinance section 17–2. In letters to Conrail from the LaPorte City Attorney on March 6, 1984 and April 2, 1984, LaPorte announced intent to enforce section 17–2.

Conrail and Amtrak assert that federal regulations[2] that address train speed limits would allow them to travel at much greater speeds through LaPorte. The railroads assert that the federal regulations preempt municipal train speed ordinances, and that these ordinances unduly burden interstate commerce. The railroads seek a declaratory judgment that the local ordinances are unconstitutional and injunctive relief against their enforcement.

The defendants moved for summary judgment on the ground that the LaPorte Common Council had repealed Municipal Ordinance section 17–2 on March 4, 1985 by Ordinance 1742, which provided in section 2 that:

> It shall be unlawful for any person to operate a locomotive at a greater speed than 40 miles per hour within the City of LaPorte.

> That this Ordinance shall become effective upon its passage, posting as required by law, and upon compliance with IND.CODE § 8–3–20–1.[3]

---

**1.** Conrail and Amtrak named Mayor Dennis Smith, City Attorney Donald E. Baugher, and Robert H. Bernth as defendants. Each of those defendants is named in his official capacity as a member of the City of LaPorte Board of Public Works and Safety.

**2.** The Department of Transportation has promulgated regulations that dictate maximum operating speeds for freight and passenger trains in the following provision:

| | Speed in Miles Per Hour | |
| | Freight Trains | Passenger Trains |
| --- | --- | --- |
| On Class 1 track | 10 | 15 |
| On Class 2 track | 25 | 30 |
| On Class 3 track | 40 | 60 |
| On Class 4 track | 60 | 80 |
| On Class 5 track | 80 | 90 |
| On Class 6 track | 110 | 110 |

49 C.F.R. § 213.9(a) (1986). 45 U.S.C. § 431 empowered the Secretary of the Department of Transportation to promulgate these regulations to promote safety and reduce rail-related accidents. 45 U.S.C. § 421. Congress imposed the following limitation on state railroad safety regulations:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434 (1986).

**3.** In 1984, Indiana adopted the following statute relating to local ordinances regulating train speed:

The LaPorte officials further stated that Conrail and Amtrak had petitioned the Indiana Public Service Commission to challenge Ordinance 1742, pursuant to IND. CODE § 8–3–20–3. These facts, the LaPorte officials asserted, rendered the railroads' lawsuit moot.

Plaintiff Chesapeake and Ohio Railway Co. (hereafter referred to as "Chessie") filed its complaint in Cause No. S85–611 on November 18, 1985 against LaPorte. Chessie alleged that it operated trains through LaPorte, and asserted that the Supremacy Clause rendered LaPorte Ordinance 1742 unconstitutional. Chessie requested a declaratory judgment to that effect and an injunction against the enforcement of Ordinance 1742. Chessie further asserted that it had submitted the issue of the ordinance's constitutionality to the Indiana Public Service Commission, which had issued an order on October 28, 1985 stating that the Commission lacked jurisdiction to determine the constitutionality of IND. CODE §§ 8–3–20–1 to 8–3–20–3, but that the Commission would address the ordinance's reasonableness.

On December 10, 1985, Conrail and Amtrak moved for leave to amend their complaint to avoid mootness by renewing their arguments against Ordinance 1742. The proposed amended complaint alleged that the Indiana Public Service Commission had postponed its review indefinitely. In their supporting brief, Conrail and Amtrak asserted that the matter was not moot because it was capable of repetition, and that the action should not be dismissed or stayed under any abstention principles.

The court held a joint status conference in Cause Nos. S85–89 and S85–611 on February 20, 1986. At the close of the confer-ence, the court granted Conrail and Amtrak's motion for leave to amend their complaint and ordered the actions consolidated under Fed.R.Civ.P. 42(a).

The court also notified the Attorney General of the State of Indiana of the pendency of these actions in light of Chessie's attack on the constitutionality of IND.CODE §§ 8–3–20–1 to 8–3–20–3. On April 9, 1986, William E. Daily, Chief Counsel for the Indiana Attorney General's Office, informed the court that his office would not exercise its right to be heard in this matter despite Chessie's challenge to the constitutionality of a state statute.

Following the status conference, the LaPorte officials moved to dismiss the consolidated actions for lack of subject matter jurisdiction. As Chessie had alleged, an administrative law judge for the Commission ruled on October 28, 1985 that he lacked authority to rule on the constitutionality of the state statute and local ordinances, but that he could address the ordinances' reasonableness under IND.CODE § 8–3–20–3. On December 4, 1985, the administrative law judge granted Conrail's motion for an indefinite continuance of the matter. Conrail petitioned the Commission for a review of its administrative law judge's order, arguing that the Commission had authority to address the preemption issue. On February 19, 1986, the Commission affirmed the administrative law judge's order in all respects, holding that under *Sunshine Promotions, Inc. v. Ridlen*, 483 N.E.2d 761 (Ind.App.1985), the Commission lacked authority to address the constitutional issue. On February 19, 1986, the Commission issued an appeal or-

---

Sec. 1. This chapter applies to all local ordinances that regulate the speed of railroad trains.

Sec. 2. Notwithstanding any other law, a speed limit ordinance does not take effect until the expiration of thirty (30) days after a copy of the ordinance is received by the general manager or the division superintendent of each affected railroad company.

Sec. 3. Before the expiration of the thirty (30) day period specified in section 2 of this chapter, the railroad company may petition the public service commission for a determination of the reasonableness of the speed limit. In such a case, the commission must make a determination of the reasonableness of the ordinance. If the commission finds the ordinance is reasonable, the ordinance takes effect on a date set by the commission. If the commission takes no action on the petition, the ordinance takes effect one hundred and twenty (120) days after the commission receives the railroad's petition. The ordinance does not take effect if the commission finds the ordinance is not reasonable.

IND.CODE §§ 8–3–20–1 to 8–3–20–3 (1986).

der affirming its administrative law judge's ruling.

Conrail, Amtrak and Chessie moved for summary judgment. Conrail and Amtrak contend that Ordinance 1742 is unconstitutional because it is preempted by federal statutes and regulations and because it places an undue burden on interstate commerce. Chessie attacks both Ordinance 1742 and IND.CODE § 8-3-20-1 *et seq.*, claiming that federal statutes and regulations preempt both the ordinance and the statute.

In its response to the LaPorte officials' dismissal motion, Chessie contends that the doctrine of exhaustion of administrative remedies does not apply to this action and that abstention is unwarranted.

The LaPorte officials have filed no response to the summary judgment motions. District Rule 9(b) subjects the motions to summary ruling.

### B. Michigan City Ordinance

Chessie filed its complaint in Cause No. S86-214 on April 9, 1986, naming the City of Michigan City, Indiana as the defendant and alleging that section 97.05 of the 1980 Municipal Code of the City of Michigan City, Indiana is unconstitutional. Section 97.05 provides:

No person shall operate any locomotive engine, electric engine, railroad, or interurban passenger car or train, or any freight car or train of any kind or description upon any railroad track, interurban track, switch track, or siding within the city at a speed greater than 25 miles per hour.

Chessie maintains that federal regulations would allow its freight trains to travel at fifty miles per hour, and its passenger trains to travel at sixty miles per hour, through Michigan City. Chessie asserts that federal statutes and regulations preempt Michigan City's Municipal Ordinance section 97.05. Chessie seeks a declaratory judgment to that effect and an injunction against enforcement of section 97.05.

Michigan City answered with admissions and denials. Chessie has moved for sum-mary judgment, asserting the same arguments as it did against LaPorte. Michigan City filed no response to Chessie's motion, subjecting it to summary judgment. District Rule 9(b).

## II.  LaPORTE OFFICIALS' MOTION TO DISMISS

The LaPorte officials rely upon two arguments. First, they contend that the doctrine of exhaustion of administrative remedies bars these suits. According to the LaPorte officials, the matter pends with the Indiana Public Service Commission; the federal action should not be allowed to proceed until Conrail exhausts its remedies with the Indiana Public Service Commission. Second, the LaPorte officials assert that the railroads' continual switching between federal court and the Indiana Public Service Commission places an undue burden upon them. According to the LaPorte officials, the parallel litigation warrants dismissal of the federal action.

Chessie responds that 28 U.S.C. §§ 1331, 1332, and 1337 vest this court with subject matter jurisdiction, and that neither exhaustion nor abstention impairs that jurisdiction. The Federal Railway Safety Act ("FRSA") does not mandate presentment of controversies to state agencies for resolution; even if it did, the FRSA preempts railroad safety ordinances. Pendency of the state litigation does not warrant abstention, because Indiana's Public Service Commission lacks the authority to address the constitutional issues the railroads present.

### A.  Subject Matter Jurisdiction

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, is merely procedural; it provides no basis for federal jurisdiction. *Aetna Life Ins. Co. of Hartford, Connecticut v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). The railroads must establish grounds for jurisdiction independent of their declaratory judgment claim. *Chance v. County Board of School Trustees of McHenry County, Illinois,* 332 F.2d 971 (7th Cir.1964). The

court must determine: (1) whether the railroads' action presents an actual controversy of a justiciable nature, and (2) whether the court is vested with subject matter jurisdiction over the action. *Aetna Life,* 300 U.S. at 240–241, 57 S.Ct. at 463–464. A detailed inquiry is unnecessary; the LaPorte officials contest neither of these matters.

The railroads' actions present a live and mature "case or controversy" as defined by Article 3 of the United States Constitution. LaPorte, by its correspondence with the railroads and its filings in this action, has manifested its intended immediate enforcement of its ordinance. The railroads' concrete interest in this action is found in the risk to their investment should they upgrade their tracks in the area to allow increased speed, only to be blocked by local ordinance. The actions present an actual justiciable controversy.

■ The railroads assert three bases for this court's subject matter jurisdiction (1) federal question jurisdiction under 28 U.S.C. § 1331; (2) diversity jurisdiction under 28 U.S.C. § 1332; and (3) commerce jurisdiction under 28 U.S.C. § 1337. Jurisdiction under § 1331 requires that the federal questions appear on the face of the well-pleaded complaint. *Gold-Washing & Water Co. v. Keyes,* 96 U.S. (Otto) 199, 24 L.Ed. 656 (1877). The railroads' complaints fulfill this requirement. The complaints include sufficient allegations of complete diversity and action involving commerce under §§ 1332 and 1337 to support jurisdiction on those grounds, as well. The railroads properly allege a sufficient amount is in controversy for the purposes of §§ 1332 and 1337, and they support their allegation by affidavit. The court is vested with subject matter jurisdiction over these actions.

### B. Exhaustion

■ The LaPorte officials argue that the court should not exercise its jurisdiction because the railroads have failed to exhaust administrative review before the Indiana Public Service Commission. The law strongly favors exhaustion of administrative remedies, but whether exhaustion is required in a given case depends upon the case's facts. *See Allen v. Grand Central Aircraft Co.,* 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); 4 K. Davis, *Administrative Law Treatise,* §§ 26.1–26.15, pp. 414–481 (2d ed. 1983). When a party seeks to challenge the constitutionality of a statute or ordinance without exhausting administrative remedies, the court must determine first whether the administrative body has the power to pass upon the issue of constitutionality.

That agencies may not nullify statutes has long been the law. *Weinberger, v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Public Utilities Commission v. United States,* 355 U.S. 534, 539, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958). Despite past uncertainty, see *Black v. Baltimore & Ohio Railroad Co.,* 398 N.E.2d 1361 (Ind.App.1980), Indiana recognizes that its administrative agencies cannot nullify state law or local ordinances. *Sunshine Promotions, Inc. v. Ridlen,* 483 N.E.2d 761 (Ind.App.1985). Thus, the threshold issue before the court is a narrow one: whether this court may decide the constitutional issue, which the Commission lacks the authority to decide, before the Commission undertakes its statutory review of the local train speed ordinances' reasonableness.

■ The doctrine of exhaustion of administrative remedies presents a fact-sensitive inquiry in which a district court is vested with discretion. *See McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). A court need not await the conclusion of administrative review of a controversy that can be resolved only by a determination of the constitutionality of a statute or ordinance if the agency lacks the power to adjudicate the constitutional claim. *Weinberger,* 422 U.S. at 749, 95 S.Ct. at 2457; *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Wheeler v. Schweiker,* 547 F.Supp. 599 (D.Vt.1982) (no exhaustion required where the claimant presents a colorable constitutional claim).

If, on the other hand, resolution of the constitutional question will require a detailed factual record, a court properly may demand exhaustion so that the agency, with expertise in the subject area, may assist in compiling that record. *W.E.B. DuBois Clubs of America v. Clark,* 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967). Exhaustion also is warranted when the matter involves an unsettled question of law or when the agency could resolve the matter on non-constitutional grounds. *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947).

Were the court to reach the Commerce Clause issue raised by Conrail, exhaustion might be appropriate: a determination by the Public Service Commission that the ordinances are not "reasonable" responses to local safety hazards would render it unnecessary to address the constitutional question. The plaintiffs raise another issue, however, as to which a requirement of exhaustion would be most inappropriate. The plaintiffs maintain that Indiana cannot, consistent with federal law, delegate to its municipalities the power to establish speed regulations; federal law grants that power exclusively to state regulatory agencies. To require the plaintiffs to present the issue to the Public Service Commission would be to require them to do what they contend the State must, but did not, do.

The plaintiffs complain, *inter alia,* of a procedural defect in Indiana's method of establishing train speed regulations. The exhaustion doctrine is misapplied if courts require plaintiffs to repair the procedural defects of which they complain before coming to court. Accordingly, the plaintiffs' preemption arguments, in which they contend that federal law precludes delegation to municipalities of the authority to regulate train speed, must be tested before the exhaustion issue can be resolved.

### C. Abstention

To the extent that the LaPorte officials contest the duplication of litigation, they raise abstention arguments. Federal courts will, in certain limited situations, stay proceedings or dismiss actions to serve the interests of comity and judicial economy. Abstention may be warranted if the action involves difficult and unsettled questions of state law, *Railroad Commission v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or if the pending state litigation is criminal or quasi-criminal in nature and involves a vital state court power, *Pennzoil, Inc. v. Texaco,* — U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or if the action involves a state's administration of its own affairs, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). None of these bases for abstention are present here.

The LaPorte officials' contention that duplicative proceedings unduly burden them may implicate a type of abstention based upon judicial economy and deference to state courts. In 1976, the Supreme Court recognized an abstention doctrine based upon duplicative state litigation in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 an action by the United States against some one thousand litigants to determine property rights in river waters. The Court held that although a pending state court action does not alone warrant a stay or dismissal of federal proceedings concerning the same matter, exceptional circumstances may warrant dismissal of a federal suit in the face of concurrent state proceedings. *Id.* at 818, 96 S.Ct. at 1246. The *Colorado River* Court found such circumstances in the case before it, including: a clear federal policy, grounded in a federal statute, to avoid piecemeal adjudication of water rights in a river system; a comprehensive system to adjudicate water rights; and the absence of "weightier considerations of constitutional adjudication". *Id.* at 818–19, 96 S.Ct. at 1246–47.

The *Colorado River* Court emphasized that the class of exceptional circumstances would be narrow. The Court stated that federal courts cannot lightly abdicate their responsibility to assert the jurisdiction that Congress has vested in them. The Court emphasized "the virtually unflagging obli-

gation of the federal courts to exercise the jurisdiction given them". 424 U.S. at 811, 96 S.Ct. at 1243. Abstention is the exception, not the rule. In the Court's words:

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id.* at 813, 96 S.Ct. at 1244, *quoting County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

The emergence of this abstention doctrine was confused somewhat by the decision two years later in *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), in which the Court reversed a mandamus order directing a district court to entertain a case in which the district court had found abstention to be proper. The holding in *Calvert Fire,* however, is best understood as one addressing the propriety of mandamus, rather than abstention.

In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), a district court had declined to exercise its jurisdiction over a contract dispute subject to the United States Arbitration Act of 1925 because of a parallel state court suit. The Court of Appeals reversed, and the Supreme Court agreed that no exceptional circumstances existed to warrant abstention. The Court reaffirmed that abstention due to parallel litigation in state courts is proper only under exceptional circumstances, and then only the clearest of justification warrants such abdication. *Id.* at 16, 103 S.Ct. at 937.

In *Lumen Construction, Inc. v. Brant Construction, Inc.,* 780 F.2d 691 (7th Cir. 1985), an opinion written by the petitioner in *Calvert Fire,* the Seventh Circuit Court of Appeals found abstention proper in a federal civil rights suit identical to a pending state case. Writing for the court, Judge Will identified several factors that a district court must consider when deciding whether to defer to pending state litigation. 780 F.2d at 694–695.

The factors identified in *Lumen Construction* do not warrant *Colorado River*-type abstention in these cases. Because the Commission lacks the power to address the constitutional issues, it would be difficult to term the Commission's review as "parallel" to these federal suits. Because the bodies will not address the same legal questions, there is no chance of duplicative expenditure of judicial resources, or of contradictory determinations. Indeed, a federal determination of the preemption issue might obviate the need for further administrative review, and so conserve the state's resources. Even if the suits were "parallel" within the meaning of *Colorado River,* no exceptional circumstances warrant abandoning jurisdiction, especially since the matter presents a determination of the constitutionality of state law under federal law.

For these reasons, this court finds that abstention is not warranted in the present action.

## III. THE RAILROADS' SUMMARY JUDGMENT MOTIONS

The court turns next to the railroads' contention that the LaPorte and Michigan City train speed ordinances are void under the Supremacy Clause of the United States Constitution. If the FRSA and federal regulations preempt the local ordinances, the railroads' Commerce Clause contentions need not be addressed. Further, determination of the validity of local ordinances will shed light on whether federal law preempts IND.CODE §§ 8–3–20–1 to 8–3–20–3. The parties dispute no issue of fact relevant to the preemption issues; the matter presents a purely legal question properly addressed under Fed.R.Civ.P. 56.

■ Congress may, within certain constitutional limits, preempt state and local government's legislative authority in a given subject area. *Wardair Canada v. Florida Dept. of Revenue,* —— U.S. ——, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986); *Pacific Gas and Electric Co. v. State Energy Resources Commission,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Congressional intent determines whether federal law preempts a particular state or local law. When Congress enacts a statute which by its language expressly provides that states cannot legislate in a given subject area, preemption is clear. *Fidelity Federal Savings and Loan Association v. De La Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). When statutory language is less clear, state law will be adjudged preempted if federal law so pervades a given field as to evince a Congressional intent to exclusively occupy the field. *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

■ If Congress has not entirely displaced state law in a given subject area, state law will be adjudged preempted nonetheless if it stands in "actual conflict" with federal law. *California Coastal Com'n v. Granite Rock Co.,* —— U.S. ——, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987); *Silkwood v. Kerr-McGee Corp.,* 464 U.S. at 248, 104 S.Ct. at 621. State law is in "actual conflict" with federal law when "it is impossible to comply with both state and federal law" or "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress". *California Coastal Com'n v. Granite Rock Co.,* —— U.S. at ——, 107 S.Ct. at 1425; *Silkwood v. Kerr-McGee Corp.,* 464 U.S. at 248, 104 S.Ct. at 621; *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

■ Courts have interpreted section 434 of the FRSA, when read together with the Congressional statement of statutory purpose in section 421 of the Act, as a declaration of Congressional intent to preempt state law in the entire area of railroad safety. In *National Association of Regulatory Utility Commissioners v. Coleman,* 542 F.2d 11 (3rd Cir.1976), the Association challenged the Federal Railroad Administration's right to preempt state accident reporting requirements. After reviewing the language of section 434, the court stated: "We believe these statutory provisions evince, as the district court determined, a 'total preemptive intent'." *Id.* at 13. Other courts have agreed. *Donelon v. New Orleans Terminal Co.,* 474 F.2d 1108 (5th Cir.1973), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *Atchinson, Topeka & Santa Fe Railroad Co. v. Illinois Commerce Comm.,* 453 F.Supp. 920 (N.D.Ill.1977). Thus, a non-federal railroad safety law will be preempted unless expressly authorized under the FRSA.

Congress authorized narrow deviations from the rule of national uniformity through two specific "exceptions" in section 434. *See Donelon,* 474 F.2d at 1112. Under the last two sentences of section 434, a state may adopt railway safety rules or continue such rules in force (1) until the Secretary of Transportation enacts a rule covering the same subject matters, or (2) when necessary to reduce a local safety hazard, if the state rule is not incompatible with federal law or interstate commerce. If the local ordinances conform with either of these provisions, they will not be preempted.

The ordinances find no support in the first of these exceptions. The Secretary of Transportation has enacted regulations covering train speed in 49 C.F.R. § 213.-9(a). The more stringent local ordinances cannot co-exist with the federal regulations.

In the third sentence of section 434, Congress provided:

... A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regu-

lation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434.

The ordinances do not, at first glance, appear to fall under the description of a "law, rule, regulation, order or standard" adopted or continued in force by a State. The State of Indiana did not adopt the LaPorte and Michigan City ordinances. These are ordinances of incorporated municipalities, adopted by the city councils, the municipal corporations' legislative bodies. Section 434 and its legislative history speak only in terms of regulations by states; no authorization for legislation is given local governments like the cities of LaPorte and Michigan City. 1970, *U.S. Code Cong. & Admin.News*, 4104, 4108–09. Every court that has addressed the question had held that the language of section 434 which permits state regulation does not permit local regulation, *Donelon*, 474 F.2d at 1112; *City of Cleveland v. Consolidated Rail Corp.*, 82 C.R.B. 2730 (Cleveland Mun.Ct., April 4, 1983, unreported); *Lara v. National Railroad Passenger Corp.*, No. H85–697 (N.D.Ind., May 27, 1986, unreported) [available on WESTLAW, DCT database]; *Rawlins v. Chesapeake & Ohio Ry. Co.*, No. 83–3623–NI-W (Berrien Cty. Mich. Circuit Ct., January 13, 1986, unreported); *Baltimore & Ohio Railroad Co. v. City of Piqua, Ohio*, No. C–3–85–312 (S.D. Ohio, June 30, 1986, unreported) [available on WESTLAW, DCT database].

The municipalities might contend that, by implication, IND.CODE § 8–3–20–1 *et seq.* vests them with the power to act as an agent of the State of Indiana. They might note that the statute was passed after the FRSA and the federal train speed regulations. This argument would fail for several reasons. First, it is difficult to interpret IND.CODE § 8–3–20–1 *et seq.* to embody an implied delegation of power. State law governs this issue, 28 U.S.C. § 1652, but no Indiana court has interpreted IND.CODE § 8–3–20–1 *et seq.* as a delegation to municipalities of Indiana's remaining regulatory authority over railroads under 45 U.S.C. § 434. Cf. *Santini v. Consolidated Rail Corp.*, 505 N.E.2d 832 (Ind.App.1987). Ab-

sent some authoritative opinion by the Indiana courts, this court is unwilling to imply such a delegation.

The courts must not, however, construe statutes so as to render them unconstitutional if reasonable alternative construction is possible. To read IND.CODE § 8–3–20–1 *et seq.* as a delegation of power to regulate under section 434 would render it unconstitutional. Congress did not intend to permit states to exercise their remaining authority under section 434 by delegating it to municipalities. Such a reading is completely at odds with the language of section 434, the structure of the FRSA as a whole, and Congressional purpose in adopting the statute.

The touchstone in interpreting a statute is its language. *Henry T. Patterson Trust v. United States*, 729 F.2d 1089, 1094 (6th Cir.1984). Section 434 does not say a state may regulate by ordinance; it says a state may regulate, when permitted to regulate at all, by "law, rule, regulation, order or standard". Congress is presumed to use words in their ordinary sense unless it expressly indicates the contrary. *Sowers v. Sec. of HHS*, 625 F.Supp. 97 (S.D.Ohio 1985), *citing Davis Bros., Inc. v. Donovan*, 700 F.2d 1368, 1370 (11th Cir.1983). To regulate by law ordinarily would be understood to mean to enact a statute. The usual understanding of regulations by rule, regulation, order or standard would be regulation by administrative agency; rules, regulations, orders, and standards are the usual forms in which administrative agencies embody their legislative output.

Turning from the FRSA's language to its structure, one finds a Congressional intent to make state regulatory agencies, not cities, a key part of the enforcement of the FRSA. 45 U.S.C. § 435 elaborately provides for the certification of state regulatory agencies and their participation in enforcement. See 1970 *U.S.Code Cong. & Ad.News* 4108–12 on the expected role for the states: state regulatory commissions are discussed at length; municipalities are not mentioned.

Finally, the municipalities' suggested construction of section 434 utterly would defeat Congress' purpose in enacting the FRSA—enhancement of railroad safety by making railroad regulation uniform. Congress was concerned that the existence of fifty separate regulatory systems in the fifty states would undermine safety. If so, separate regulation by every city, village, township, or hamlet along the mainline would undermine safety infinitely more. Separate municipal regulation of speed is so greatly at odds with the Congressional purpose of uniformity as to need no further argument.

It cannot be argued that the Public Service Commission has delegated to the municipalities a right to regulate train speeds; the Public Service Commission itself cannot delegate its power to local government entities under Indiana law. *New York R.R. v. Public Service Commission,* 191 Ind. 627, 134 N.E.2d 282 (1922).

■ On this basis, this court finds that LaPorte's Municipal Ordinance 1742 and section 97.05 of the Municipal Code of the City of Michigan City are preempted by federal law. Accordingly, the court need not reach the Commerce Clause arguments that Conrail and Amtrak raise against the LaPorte ordinance. Further, the court will not require exhaustion of administrative remedies; such exhaustion would now be futile.

The court's refusal to find that IND. CODE § 8–3–20–1 *et seq.* delegates the powers reserved to the State under section 434 precludes a finding that federal statute preempts, and renders unconstitutional, the state statute.

## IV. CONCLUSION AND ORDER

IT IS HEREBY ORDERED AND ADJUDGED that:

(1) the defendant City of LaPorte's Municipal Ordinance section 1742 is declared to be null and void;

(2) the defendant City of LaPorte, Indiana is permanently enjoined from enforcing section 1742 against the plaintiffs Consolidated Rail Corporation, National Railroad Passenger Corporation, and Chesapeake & Ohio Railway Company;

(3) the defendant the City of Michigan City's Municipal Code section 97.05 is declared null and void;

(4) the defendant Michigan City, Indiana is permanently enjoined from enforcing section 97.05 against the plaintiff Chesapeake & Ohio Railway Company;

(5) the plaintiffs Consolidated Rail Corporation's and National Railroad Passenger Corporation's Commerce Clause claims against the City of LaPorte's Municipal Ordinance section 1742 and City of Michigan City's Municipal Code section 97.05 are denied as moot; and

(6) the plaintiff Chesapeake & Ohio Railway Company's Supremacy Clause claim against IND.CODE §§ 8–3–20–1 to 8–3–20–3 is denied.

SO ORDERED.