**CITY OF COVINGTON, KENTUCKY, Plaintiff,**

v.

**The CHESAPEAKE & OHIO RAILWAY CO., Defendant.**

**Civ. A. No. 88–21.**

United States District Court, E.D. Kentucky, Covington Division.

April 3, 1989.

---

Rita Ferguson, Edmondson, Condit & Calvert, Covington, Ky., for plaintiff.

Gerald Dusing, Adams, Brooking, Stepner, Woltermann & Dusing, Florence, Ky., for defendant.

## OPINION AND ORDER

BERTELSMAN, District Judge.

This opinion addresses an action by the City of Covington, Kentucky (hereinafter City) for a declaration of its rights under City Ordinance No. O/R 31–87 (January 12, 1988), enacted pursuant to power delegated to the City by KRS 96.050(6), to regulate the speed of trains within the City limits. The City contends that the speed regulation is not preempted by the Railway Safety Act, 45 U.S.C. § 421 et seq. (hereinafter FSRA).

This matter is presently before the court on defendant's motion for summary judgment.

## FACTS

In January 1988, the City enacted Ordinance No. O/R 31–87 limiting the speed of trains to 25 m.p.h. within the City limits.

The City relies upon the authority of KRS 96.050(6) which expressly delegates power to a city to regulate train speed within its boundaries, as well as upon more general home rule statutes of the state.

In its complaint for declaratory judgment and damages against the defendant, The Chesapeake & Ohio Railway Co. (hereinafter C & O), filed in the Kenton County, Kentucky Circuit Court on January 27, 1988, the City asserted that the defendant had stated to City officials that the Ordinance would not pass constitutional scrutiny. Defendant filed a petition to remove the case to this court on February 10, 1988, and the court recognized that it had diversity jurisdiction on July 18, 1988.

The City essentially argues that the right to regulate the speed of trains within city limits for public health and safety is within the police power expressly delegated by the state in KRS 96.050(6) and other home rule statutes. It further argues that since the FSRA, 45 U.S.C. § 421 et seq., does not expressly regulate train speeds to accommodate safety concerns in cities, but rather undertakes only to prescribe maximum speeds over prescribed classes of track, 49 C.F.R. § 9(a) (1986), it does not preempt city ordinances specifically enacted to relieve local safety concerns.

C & O argues that the FSRA preempts any local safety law which is incompatible with federal regulations and which creates an undue burden on interstate commerce.

The issue in this matter is, whether the Railway Safety Act preempts the City Ordinance, notwithstanding that the City was empowered to regulate the speed of trains within its boundaries by the Commonwealth.

## CONCLUSION

The Railway Safety Act preempts the City Ordinance since it is in conflict with the federal regulation of train speeds in 49 C.F.R. § 213.9(a)(1986). KRS 96.050(6) improperly delegates power to the cities to regulate train speeds and is void.

## ANALYSIS

Congress may within certain constitutional limits preempt state and local governments' legislative authority in a given subject area. *Wardair Canada v. Florida Dept. of Revenue,* 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986). Congressional intent determines whether federal law preempts a particular state or local law.

Even if Congress has not expressly displaced state law in a given subject area, state law will be adjudged preempted nonetheless if it stands in "actual conflict" with federal law. *California Coastal Com'n v. Granite Rock Co.,* 480 U.S. 572, 107 S.Ct. 1419, 1425, 94 L.Ed.2d 577 (1987); *Consolidated Rail Corp. v. Smith,* 664 F.Supp. 1228, 1230 n. 2 (N.D.Ind.1987); *Chesapeake & Ohio Ry. Co. v. City of Bridgman,* 669 F.Supp. 823, 825 (W.D.Mich.1987).

Moreover, the law of implied preemption provides that "where failure of . . . federal officials affirmatively to exercise their full authority takes on the character of a ruling that no . . . [state] regulation is appropriate or approved pursuant to the policy of [a federal] statute, states are not permitted to use their police power to enact such a regulation." *Missouri Pacific R.R. v. Railroad Com'n of Texas,* 850 F.2d 264, 267 (5th Cir.1988), (citing *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 179, 98 S.Ct. 988, 1005, 55 L.Ed.2d 179 (1978)).

The authorities are clear that the Secretary of Transportation is considered to have intended to regulate train speeds exclusively by "specifically designating permissible operating speeds for various classes of track" in the FSRA implementing regulations (49 C.F.R. § 213.9(A)). Thus, these regulations preclude "more stringent local ordinance[s] [regulating speed which] cannot co-exist with the federal regulations." *Southern Pacific Trans-portation Co. v. Town of Baldwin,* 685 F.Supp. 601, 603 (W.D.La.1987) (city established 35 m.p.h. speed limit for trains within city limits); *Consolidated Rail Corp. v. Smith,* 664 F.Supp. at 1236 (same). These cases do not make the distinction between "regulating the speed of trains" and "regulating the speed of trains on specified classes of track" that plaintiff urges. To regulate one is to regulate the other.

The City urges, however, that there are two specific "exceptions" provided for in § 434 of the FSRA. Under the last two sentences of § 434, a state may adopt railway safety rules or continue such rules in force (1) until the Secretary of Transportation enacts a rule covering the same subject matter, or (2) when necessary to reduce a local safety hazard, if the state rule is not incompatible with federal law or interstate commerce.

The first exception has been covered *supra.* 49 C.F.R. § 213.9(a) has been interpreted by the courts as the "rule covering the same subject matters." *Consolidated Rail Corp.,* 664 F.Supp. at 1236.

The second exception does not intend, by the weight of authority, to authorize each municipality within a state to establish speed limits for trains as they pass through their respective city limits. Moreover, to the extent that KRS 96.050(6) or any other home rule statute is read to permit such action, it is unconstitutional by virtue of the Supremacy Clause. "Congress did not intend to permit states to exercise their remaining authority under section 434 by delegating it to municipalities. Such a reading is completely at odds with the language of section 434, the structure of the FSRA as a whole, and Congressional purpose in adopting the statute." *Consolidated Rail Corp.,* 664 F.Supp. at 1237; *Town of Baldwin,* 685 F.Supp. at 604; *City of Bridgman,* 669 F.Supp. at 826.

Underlying these decisions is a determination that local ordinances aimed at alleviating what are individually perceived by municipalities to constitute "local safety hazard[s]" do not, in the larger picture, reduce hazards at all, but rather may create them. Judge Miller's comments in *Consolidated Rail Corp., supra,* are apt.

"Finally, the municipalities suggested construction of section 434 utterly would defeat Congress' purpose in enacting the FSRA—enhancement of railroad safety by making railroad regulation uniform. Congress was concerned that the existence of fifty separate regulatory systems in the fifty states would undermine safety. If so, separate regulation by every city, village, township, or hamlet along the mainline would undermine safety infinitely more. Separate municipal regulation of speed is so greatly at odds with the Congressional purpose of uniformity as to need no further argument."

664 F.Supp. at 1238. *See also* 1970 U.S. Cong. & Adm.News at 4104, 4109 (cited in defendant's reply at 4).

Finally, the City's assertion of the 1885 contract with defendant's distant predecessor, in which the City granted the railroad rights of way on condition that it comply with City mandated speed limits, does not raise a genuine issue of fact. Even if the contract were still valid (and the speed limit provisions appear to have expired in October 1935 pursuant to § 1410 of the ordinance), it would be preempted by 49 C.F.R. § 213.9(a) as an impediment to interstate commerce.

The court is sympathetic to the concerns of the City for the safety of its citizens, but it is apparent that safety regulations addressing local conditions must be enacted at the state level.

Accordingly, there are no genuine issues of material fact and defendant's motion for summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Therefore, the court being advised,

IT IS ORDERED that the motion of defendant for summary judgment be, and it is, hereby granted. A separate Judgment will enter dismissing the complaint.