**WABASH & WESTERN RAILWAY CO. d/b/a Michigan Southern Railroad, a Corporation, Plaintiff,**

v.

**The CITY OF KENDALLVILLE, INDIANA, a Municipal Corporation, Defendant.**

No. 1:98–CV–50.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 1, 1998.

John C. Theisen, Barnes and Thornburg, Fort Wayne, IN, for Wabash & Western Ry. Co.

Michael M. Yoder, Kendallville, IN, Jeffrey S. Arnold, Yoder Law Office, Kendallville, IN, for City of Kendallville, Indiana.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on the motion for summary judgment filed by the Plaintiff, Wabash & Western Railway Co. d/b/a Michigan Southern Railroad ("MSR"), on May 4, 1998. The Defendants, The City of Kendallville, Indiana ("the City") responded on May 21, 1998, and MSR replied on May 28, 1998. The Court heard oral argument on the motion on July 9, 1998, and subsequently ordered the parties to file a stipulation of facts and supplemental briefs.

MSR filed a supplemental memorandum in support on August 10, 1998, and the City filed a supplemental memorandum in opposition on August 25, 1998, but due to reasons that are apparently beyond the control of the parties they cannot agree to a set of stipulated facts. Each party filed a separate set of proposed stipulated facts on September 15, 1998, and the motion is ripe for review. For the reasons hereinafter provided, the motion will be DENIED.

## II.  FACTUAL BACKGROUND[1]

MSR is an Iowa corporation authorized to do business in Indiana as a common carrier railroad under the name Michigan Southern Railroad, and the City is an Indiana municipal corporation. MSR controls and operates a section of railroad that runs through the City's corporate limits, and believes that it leases and has an agreement to purchase a "railroad right of way" that generally extends fifty (50) feet on either side from the center of its main track through the City. According to an enhanced aerial photograph provided by the City, the track extends approximately 4,000 feet through the City, and MSR's right of way along the track varies from approximately 66 to 100 feet in width.

The dispute in this case centers on the City's attempts to enforce City General Ordinance No. 691 ("the Ordinance"), which regulates weed growth in the City. The Ordinance reads in pertinent part:

That whenever it shall be determined that any owner of real estate within the corporate limits of the City of Kendallville, Indiana, has allowed his lawn or real estate to be grown up with weeds or other rank vegetation, then the ... City of Kendallville shall have served ... a five (5) day written notice to remove said weeds or other rank vegetation.... If the owner fails to remove said weeds or rank vegetation within said five (5) day period, the City of Kendallville may remove the weeds and rank vegetation and the ... City shall make a certified statement of the actual

cost incurred by the City in the removal and a statement shall be delivered to the owner of the real estate ... and the owner shall have not more than ten (10) days in which to pay the amount to the ... City of Kendallville.

The City has attempted to enforce the Ordinance against MSR by cutting or spraying weeds and undergrowth that have grown along the MSR's right of way through the City and charging the costs to MSR. MSR subsequently brought this action to permanently enjoin the City from enforcing the Ordinance, and to obtain a declaratory judgment that the Ordinance is pre-empted by the federal regulations promulgated by the Federal Railroad Administration ("FRA") pursuant to the Federal Railroad Safety Act of 1970, 49 U.S.C. § 20101, et seq. as amended ("FRSA").[2]

## III.  STANDARD OF REVIEW

The Court will grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We do not weigh the evidence submitted by the parties, or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, we view all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Vanasco v. National–Louis Univ.*, 137 F.3d 962, 965 (7th Cir.1998). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir.1995).

## IV.  DISCUSSION

### A.  Federal Preemption and the FRSA

The supremacy clause of the United States Constitution provides that the Constitution and valid federal laws are "the su-

1. The following factual recitation is drawn from the proposed stipulated facts submitted by each party.

2. The FRSA empowers the FRA, an administration in the Department of Transportation, to pro-

mulgate regulations governing railroad safety. *See Southern Pacific Transp. Co. v. Public Utility Commission of State of Oregon*, 9 F.3d 807, 812 (1993); 45 U.S.C. § 103; 49 U.S.C. § 20103(a).

preme law of the land." U.S. Const. art, VI, cl. 2. Thus, where a state statute or municipal ordinance conflicts with, or frustrates, federal law, the state law or municipal ordinance must give way. *E.g., Burlington Northern and Santa Fe Ry. Co. v. Doyle,* 24 F.Supp.2d 928, 933–34, 1998 WL 775307, at *5 (E.D.Wis. Oct. 28, 1998) (quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)); *see generally DeHart v. Town of Austin, Indiana,* 39 F.3d 718, 721 (7th Cir.1994). While pre-emption may be effectuated by congressional statutes or federal regulations promulgated pursuant to statutory authorization, *DeHart,* 39 F.3d at 721 (citing *Louisiana Public Service Com'n v. FCC,* 476 U.S. 355, 368–369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)), there is a presumption against federal pre-emption of state or local law. *E.g., Thiele v. Norfolk & Western Ry. Co.,* 68 F.3d 179, 181 (7th Cir.1995) (citing *Easterwood,* 507 U.S. at 668, 113 S.Ct. 1732). "Thus, pre-emption will not lie unless it is the 'clear and manifest purpose of Congress.'" *Easterwood,* 507 U.S. at 664, 113 S.Ct. 1732 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives." *Florida Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

The FRSA does contain a specific preemption clause, which reads:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. *A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.* A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—
>
> (1) is necessary to eliminate or reduce an essentially local safety hazard;
>
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 (emphasis added). Courts have consistently interpreted this clause as a declaration of Congressional intent to pre-empt state and local law in the area of railroad safety. *E.g., Consolidated Rail Corp. v. Smith,* 664 F.Supp. 1228, 1236 (N.D.Ind. 1987). However, the test of whether a state or local regulation "covers the same subject matter" as a federal regulation promulgated pursuant to the FRSA is a stringent one:

> [t]o prevail on the claim that the regulations have pre-emptive effect, petitioner must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that pre-emption may lie only if the federal regulations substantially subsume the subject matter of the relevant state law. The term "covering" is in turn employed within a provision that displays considerable solicitude for state law in that its express pre-emption clause is both prefaced by and succeeded by express saving clauses.

*Easterwood,* 507 U.S. at 664–65, 113 S.Ct. 1732 (internal citations omitted); *see also Southern Pacific,* 9 F.3d at 812 (recognizing that under *Easterwood* the § 20106 pre-emption standard is not easily met).

Turning back to the specifics of this case, MSR correctly points out that the FRA has, pursuant to its authority under the FRSA, promulgated a regulation that expressly pertains to vegetation:

> Vegetation on railroad property *which is on or immediately adjacent to roadbed* shall be controlled so that it does not—
>
> (a) Become a fire hazard to track-carrying structures;
>
> (b) Obstruct visibility of railroad signs and signals:
>
> (1) Along the right-of-way, and
>
> (2) At highway railroad crossings;
>
> (This paragraph (b)(2) is applicable September 21, 1999.)
>
> (c) Interfere with railroad employees performing normal trackside duties;

(d) Prevent proper functioning of signal and communication lines; or

(e) Prevent railroad employees from visually inspecting moving equipment from their normal duty stations.

49 C.F.R. § 213.37 (1998) (emphasis added); *see also* 49 C.F.R. § 213.33 ("[§ 213.37] prescribes minimum requirements for roadbed and areas immediately adjacent to roadbed.") MSR takes the position that this regulation pre-empts all state and local laws pertaining to vegetation control within the railroad's entire right of way.[3] The City, on the other hand, acknowledges that the regulation may pre-empt the Ordinance at least as to the areas on or adjacent to the roadbed, but argues that the regulation does not pre-empt enforcement of the Ordinance against MSR in areas beyond the roadbed.

## B. Analysis

■ The legal question before the Court is simple: Does the Ordinance cover the same subject matter as 49 C.F.R. § 213.37?[4] The answer appears to be: Partially. The Fifth Circuit was the first to address the pre-emptive reach of § 213.37, and it simply relied upon the plain meaning of the regulation's language to make its determination:

> The area "immediately adjacent to the roadbed" abuts the roadbed. Right-of-way property can and often does extend several yards from the roadbed, however. Consequently, not all right-of-way property lies "immediately adjacent to the roadbed," *and the federal regulation does not "cover the subject matter" of vegetation that is on the right-of-way but not immediately next to the roadbed.*

*Missouri Pacific R.R. Co. v. R.R. Comm'n of Texas,* 833 F.2d 570, 577 (5th Cir.1987) (emphasis added). Every federal court to subse-

quently consider this issue has similarly held that state and local vegetation control ordinances "cover the same subject matter" of § 213.37, (i.e. are pre-empted), only to the extent that they regulate vegetation that is on or immediately adjacent to the roadbed; by the same token, these courts have found that § 213.37 does not pre-empt state and local regulation of vegetation within the railroad right of way but not on or adjacent to the roadbed. *See Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1554 (11th Cir. 1991) ("To the extent that Easterwood is bringing a claim for the vegetation near, but not immediately adjacent to, the tracks, this claim is not pre-empted."), *aff'd* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)[5]; *O'Bannon v. Union Pacific R. Co.,* 960 F.Supp. 1411, 1423 (W.D.Mo.1997) (vegetation not on or immediately adjacent to the railbed is "outside the scope of 49 C.F.R. § 213.37's preemptive force"); *National R.R. Passenger Corp. v. H & P, Inc.,* 949 F.Supp. 1556, 1563 (M.D.Ala.1996); ("because these regulations apply only to vegetation on, and immediately adjacent to the railbed, states are free to regulate vegetation beyond the area contemplated by 49 C.F.R. § 213.37"); *Borden v. CSX Transp. Inc.,* 843 F.Supp. 1410, 1415 (M.D.Ala.1993) (same); *Bowman v. Norfolk Southern Ry. Co.,* 832 F.Supp. 1014, 1021 (D.S.C.1993) ("to the extent the plaintiff's claim relates to vegetation on the defendant's right of way near the tracks, beyond the area covered by the federal regulation, this claim is not pre-empted"), *aff'd,* 66 F.3d 315 (4th Cir.1995) (Table); *Biggers v. Southern Ry. Co.,* 820 F.Supp. 1409, 1421 (N.D.Ga.1993) ("The Secretary [of Transportation] has not regulated vegetation that is not immediately adjacent to the roadbed"); *Smith v. CSX Transp. Inc.,* 805 F.Supp. 37, 39 (M.D.Fla.1992). *Accord Carter v. CSX*

---

3. MSR also contends that 49 C.F.R. § 213.33, which regulates drainage under or immediately adjacent to the roadbed, also figures into the pre-emption equation. Counsel for MSR mentioned at oral argument that cutting the weeds at issue might somehow affect water drainage and track integrity on or adjacent to the roadbed, thereby implicating § 213.33, but MSR has provided absolutely no factual support for this theory. Therefore the Court will not consider the potential pre-emptive effect, to the extent any might exist given our discussion *infra,* of § 213.33.

4. MSR frames the inquiry differently, and focuses its arguments on the question of whether the Ordinance falls within the specific "State" exceptions to pre-emption prescribed in 49 U.S.C. § 20106. This approach overlooks the critical threshold inquiry of whether the Ordinance is pre-empted at all, for if it is not, then obviously we need not analyze these pre-emption "exceptions."

5. Unfortunately, the Supreme Court did not address this aspect of the Eleventh Circuit's decision.

*Transp., Inc.,* 1994 WL 836291, at *3 (S.D.Miss. Nov.8, 1994); *Southern Pacific Transp. Co. v. Builders Transport, Inc.,* 1993 WL 185620, at *6 (E.D.La. May 25,1993); *Missouri Pacific R.R. Co. v. Mackey,* 297 Ark. 137, 760 S.W.2d 59, 63–64 (Ark.1988).[6]

Against this backdrop, it is clear that the City Ordinance may properly be enforced to regulate weed growth in areas within MSR's right of way that are not on or adjacent to the roadbed. This, of course, leads to the next stage of the inquiry: Where exactly does the area "adjacent to the roadbed" begin and end? As the cases have unanimously held, this veritable DMZ of federal weed regulation marks the boundary between the area where the City may properly enforce the Ordinance within MSR's right of way and the area where the Ordinance is pre-empted by § 213.37. Unfortunately, neither party has made a serious effort to address this fact-specific question. The Court simply cannot rule as a matter of law on the scope of § 213.37's pre-emptive force when the factual record consists of nothing more than a copy of the Ordinance and some photographs that "generally depict some of the areas at or near portions of MSR's right of way on or about July 9, 1998." This dearth of material facts, combined with the plain language of 49 C.F.R. § 213.37, leads to the inevitable conclusion that MSR's pre-emption argument is untenable.[7]

## V. CONCLUSION

For all the reasons provided, MSR's motion for summary judgment is DENIED

---

6. The Court recognizes that none of these cases addressed a municipal vegetation ordinance such as the one at issue here, but believes that the reasoning of these cases nonetheless applies to this case.

This conclusion is bolstered by the FRA's explanation of its recent amendment to 49 C.F.R. § 213.37, which added subsections (b)(1) and (b)(2). According to the FRA, these subsections are intended only to cover the clearing of vegetation at highway-rail grade crossings to provide adequate visibility of railroad signs and signals, and are not intended to cover or pre-empt state or local requirements for the clearing of vegetation on the right-of-way at highway-rail grade

crossings. *See* Track Safety Standards, 63 Fed. Reg. 33,992, 34,004 (June 22, 1998). Based on this statement, it would appear that § 213.37 in general is not intended to cover or pre-empt municipal requirements for the clearing of vegetation that is within the right-of-way but is not on or adjacent to the roadbed.

7. Although the Constitutional and statutory questions at issue in this case are not among the most pressing this Court has ever adjudicated, counsel are admonished to remember that this Court does not take lightly its obligations under Fed. R.Civ.P. 56 and N.D.Ind.L.R. 56.1.