NATIONAL ASSOCIATION OF REGU-
LATORY UTILITY COMMISSION-
ERS et al., Appellants,

v.

William T. COLEMAN, Jr., Individually
and as Secretary of Transportation of
the United States of America and Asaph
H. Hall, Individually and as Acting Ad-
ministrator of the Federal Railroad Ad-
ministration, Department of Transporta-
tion,

Department of Transportation of the
State of New York (Intervening
Plaintiff in D.C.).

No. 75–2390.

United States Court of Appeals,
Third Circuit.

Argued June 10, 1976.

Decided Aug. 31, 1976.

**12**

Paul Rodgers, Gen. Counsel, Sumner J. Katz, Asst. Gen. Counsel, Nat. Assn. of Regulatory Utility Comrs., Washington, D. C., Edward J. Morris, Counsel, John B. Wilson, Asst. Counsel, Pennsylvania Public Utility Commission, Harrisburg, Pa., Gordon P. MacDougall, Special Asst. Counsel, Washington, D. C., Bernard Sack, Counsel to the Commissioner of Transportation of the State of New York, Albany, N. Y., for appellants.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C.; S. John Cottone, U. S. Atty., Scranton, Pa., Morton Hollander, Eloise E. Davies, Attys., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for appellees; Donald W. Bennett, Chief Counsel, J. Thomas Furphy, Asst. Chief Counsel, Thomas C. Barbour, Trial Atty., Dept. of Transp., Federal Railroad Administration, Washington, D. C., of counsel.

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

OPINION OF THE COURT

SEITZ, Chief Judge.

The issue presented on this appeal is whether the Federal Railroad Safety Act, 45 U.S.C. § 421 *et seq.*, empowers the Federal Railroad Administration to promulgate regulations which preempt state railroad accident reporting requirements.

The pertinent facts may be briefly summarized. Plaintiffs are the Pennsylvania Public Utility Commission (PUC), the Commonwealth of Pennsylvania, the National Association of Regulatory Utility Commissioners (NARUC), and the Department of Transportation of the State of New York. The defendants are the Secretary and Department of Transportation, and the Federal Railroad Administration (FRA) and Acting Administrator thereof.

In December 1974, the FRA amended Part 225 of Title 49 of the Code of Federal Regulations to provide nationally uniform requirements for the reporting of railroad accidents to the FRA. The regulations contained the following provision:

"Issuance of these regulations under the Federal Railroad Safety Act preempts States from prescribing accident/incident reporting requirements."
49 C.F.R. § 225.1.

Plaintiffs then filed this action requesting the court to declare invalid and to enjoin enforcement of the regulations to the extent they preempt state accident reporting requirements. The district court, in a thor-

ough and well-reasoned opinion,[1] denied plaintiffs' requests for relief, finding that the Federal Railroad Safety Act empowered the FRA to issue the challenged regulation. This appeal followed.

The Commonwealth of Pennsylvania and the PUC first contend that the district court erred in denying their motion to request the convening of a three-judge court to review the FRA's order. At the time this action was commenced, review of agency action under the Accident Reports Act required the convocation of a three-judge court, whereas agency orders under the Federal Railroad Safety Act were reviewable by a single district judge. In the instant case, the regulations promulgated by the FRA expressly state that they are based, in general, on the authority of both Acts. However, the specific provision challenged here which preempts state accident reporting requirements recites as its sole statutory basis the Federal Railroad Safety Act. We therefore conclude that the single district judge correctly denied plaintiffs' motion and properly exercised jurisdiction in the instant case.

We turn, therefore, to plaintiffs' allegations of error with respect to the district court's conclusion that the Federal Railroad Safety Act authorizes the FRA to issue preemptive accident reporting regulations. Applying the test set forth in *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), plaintiffs maintain that Congress did not "unmistakably ordain", and the nature of accident reporting requirements does not require, that state reporting requirements be preempted. Rather, they assert, the Federal Railroad Safety Act contemplates concurrent state and federal regulation in the accident reporting and railroad safety field. On the other hand, defendants contend and the district court concluded that the express language and legislative history underlying the Federal Railroad Safety Act both manifest an intent on the part of Congress to provide a nationally uniform system of railroad safety regulations, a goal which can only be achieved through the preemption of state requirements.

Our analysis commences with the language of the Federal Railroad Safety Act itself, which provides in pertinent part:

§ 434. National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.
45 U.S.C. § 434.

Section 434 expressly declares that a primary objective of the Act is the establishment of a nationally uniform system of regulation in the rail safety field. State adopted regulations, with the exception of those which are designed to eliminate an essentially local safety hazard, are permitted to continue in force only until such time as a federal regulation covering the same subject matter is promulgated. We believe these statutory provisions evince, as the district court determined, a "total preemptive intent."

Our conclusion that the Act was intended to preempt the field of rail safety is confirmed by the legislative history. The House Committee on Interstate and Foreign Commerce, to whom the bill was referred, concluded in its report that safety in the nation's railroads would not be ad-

---

1. 399 F.Supp. 1275 (M.D.Pa.1975).

vanced by subjecting the national rail system to a variety of enforcement and conflicting requirements in 50 different jurisdictions. 1970 U.S.Code Cong. & Admin. News, p. 4109. Notwithstanding its conclusion that there was a need for national uniformity in this area, the Committee approved a recommendation "that existing State requirements remain in effect until preempted by Federal action." *Id.* at 4108. This limitation was to be effective, however, only until federal regulations were promulgated to supersede the state requirements then in effect. It was clearly understood that "[o]nce the [FRA] has prescribed a uniform national standard the State would no longer have authority to establish Statewide standards with respect to rail safety." *Id.* at 4116–17.

Despite this overwhelming expression of congressional intent to preempt state rail safety standards once federal standards have been adopted, plaintiffs argue that the scheme and language of the Act and the nature of state accident reporting requirements do not foreclose the states from maintaining their own accident reporting systems.

■ In support of their position, they first contend that Section 434 applies only to state *substantive* safety requirements which conflict with federal regulations, but not to state *accident reporting* requirements. Plaintiffs' attempted distinction, however, between substantive safety standards and accident reporting requirements is substantiated neither by the statutory scheme nor the legislative history. The sweeping congressional declaration of purpose contained in § 421 provides that "the purpose of this Act is to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce deaths and injuries to persons and to reduce damage to property caused by accidents involving any carrier of hazardous materials." Obviously, uniform accident reporting requirements would facilitate the achievement of this national goal by assisting the FRA in identifying the causes of railroad accidents, thereby enabling the re-

sponsible federal authorities to promulgate appropriate safety standards. Indeed, dissatisfaction with state reporting and investigation practices, due to their failure to provide sufficient statistics · to determine the causes of accidents, was expressly mentioned in the House Report. 1970 U.S.Code Cong. & Admin.News, p. 4108. We therefore conclude that the congressional mandate to provide broad federal regulatory authority over all areas of railroad safety necessarily includes the authority to fashion uniform national accident reporting requirements as well as substantive safety standards.

■ Plaintiffs next argue that since state safety standards are to remain effective until national rules are promulgated, there could be no intent to preempt accident reporting requirements which provide the information needed to administer those safety standards. In essence, plaintiffs dispute the wisdom of the FRA's decision to promulgate federal accident reporting regulations without first preempting substantive safety standards. The only question presented in the instant case, however, is whether the FRA possesses the power to preempt accident reporting regulations, not whether it has exercised that power in a prudent manner. As the district court determined, this latter question is beyond the permissible scope of review of the federal courts.

■ Plaintiffs' contention that state accident reporting requirements are expressly excepted under the savings clause of Section 434, which permits the states to adopt regulations to eliminate essentially local safety hazards, is similarly devoid of merit. Their attempted invocation of the "local hazard" savings clause is contrary to the express congressional pronouncement that the exception is not intended "to permit a State to establish Statewide standards superimposed on national standards covering the same subject matter." *Id.* at 4117. The exception was designed instead to enable the states to respond to local situations which are not statewide in character and not capable of being adequately ‚encom-

passed within uniform national standards. With this purpose in mind, we do not believe that statewide accident reporting requirements, which are largely duplicative of federal reporting requirements and not directed toward the elimination of any unique, local hazard, come within the statutory exception.

■ Plaintiffs next assert that the preemption of state accident reporting requirements nullifies the right of individual states to participate in the enforcement of national safety standards under § 435(b)(2) of the Act, which requires each participating state to submit to the FRA yearly reports showing all accidents or incidents reported during the preceding 12 months, together with a summary of the state agency's investigatory activities with respect to the accidents reported. We find no merit in this contention. Significantly, the challenged regulation preempts the states only with respect to *monthly* accident reporting requirements. It does not prevent them from requiring rail carriers to provide immediate notification of accidents in order to enable the states to launch promptly their own investigations. Nor does it forbid the states from requiring the railroads to furnish them copies of the monthly reports filed with the FRA. Hence, the preemption of state monthly reporting requirements does not, as plaintiffs suggest, render the states incapable of providing the necessary annual accident reports which are a prerequisite to state participation in the federal program. We note also that the regulation in no way hinders the states in their preparation and submission of reports concerning their own investigatory activities with respect to the accidents reported, a second requirement of state certification. 45 U.S.C. § 435(b)(2).

■ Finally, plaintiffs argue that preemption of state accident reporting requirements could not have been intended because the legislative history indicated that the Federal Railroad Safety Act was to be administered and enforced in concert with the existing regulatory framework, including the Accident Reports Act under which state accident reporting requirements have been found not to be preempted. *E. g., Atlantic Coast Line R. Co. v. Tiller*, 142 F.2d 718 (4th Cir. 1944), *rev'd on other grounds*, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945). In essence, plaintiffs contend that the preemption of state accident reporting requirements interferes with the administration of the Accident Reports Act. It is this contention to which we now turn.

The 1910 Accident Reports Act requires all railroads which are common carriers to submit monthly accident reports to the Secretary of Transportation. The 1910 Act is silent, however, with respect to the right of the states to adopt and administer their own reporting requirements. Assuming they had the right to do so, numerous states adopted accident reporting requirements pursuant to the state police power and have administered them concurrently with the Department of Transportation's administration of the federal regulations.

The Federal Railroad Safety Act empowers the FRA to adopt regulations preempting state accident reporting requirements. The 1910 Act does not contain any language which authorizes the states to establish their own reporting systems. Consequently, the challenged federal regulation, which was adopted pursuant to the Federal Railroad Safety Act, is not contrary to the 1910 Act and does not interfere with its effective administration. Hence, the congressional history which directs that the Federal Railroad Safety Act be administered in concert with existing railroad safety legislation provides plaintiffs no solace.

The judgment of the district court will be affirmed.