880 F.2d 1104
 BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff-Appellee,
v.
STATE OF MONTANA; the Montana Department of Public Service
Regulation, Public Service Commission; and
Michael Greely, Attorney General,
Defendants-Appellants,
and
United Transportation Union, Defendant-Intervenor-Appellant.
 Nos. 87-4428, 87-4455.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 10, 1989.
Decided July 26, 1989.
 
 Timothy R. Baker, Montana Dept. of Public Service Regulation, Public Service Com'n, Helena, Mont., and Joe R. Roberts, Asst. Atty. Gen., Dept. of Justice, Helena, Mont., for defendants-appellants.
 Betty Jo Christian, Steptoe & Johnson, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Montana.
 Before HUG, NORRIS and THOMPSON, Circuit Judges.
 WILLIAM A. NORRIS, Circuit Judge:
 
 
 1
 The State of Montana appeals a decision of the United States District Court for the District of Montana holding that a Montana statute requiring an occupied caboose on trains more than two-thousand feet in length is preempted by Federal Railroad Administration ("FRA") safety regulations. Those regulations were issued under the Federal Railroad Safety Act ("FRSA"), Pub.L. No. 91-458, 84 Stat. 971 (1970), codified at 45 U.S.C. Secs. 421-445 (1982), which gives the FRA comprehensive regulatory authority over national railroad safety issues. The FRSA requires that "laws, rules, regulations, orders, and standards, relating to railroad safety shall be nationally uniform to the extent practicable," and provides that a state may regulate railroad safety only to the extent no federal action has been taken "covering the subject matter" of the state regulation. 45 U.S.C. Sec. 434 (1982). Our appellate jurisdiction rests on 28 U.S.C. Sec. 1291.
 
 
 2
 Pursuant to its authority under FRSA, the FRA in 1986 promulgated two regulations affecting cabooses. The first regulation amended existing rules for monitoring rear-end marking devices on passenger, commuter and freight trains. Under the previous rules, a train crew member was required to perform specified visual observations to monitor the condition of the rear-end marking device, which as a practical matter involved stationing an employee in the last car of the train. See 51 Fed.Reg. 25,181-82 (1986). As amended, the regulations permit the use of radio telemetry equipment as an alternative to visual observation. 49 C.F.R. Secs. 221.5-16 (1987). By offering an alternative to visual observation, the amended rules dispense with the need for occupied cabooses.
 
 
 3
 The second FRA regulation amended the FRA's rules for monitoring the operation of rear-train power brakes. The amended rules likewise have the effect of accommodating cabooseless trains by permitting the use of a telemetry device to monitor brake pipe pressure in the rear car of a train in lieu of visual observation. See 49 C.F.R. Secs. 232.13, 232.19 (1987).
 
 
 4
 In the FRA rulemaking proceedings, those opposing the amendments focused on the caboose issue, arguing that "the elimination of a caboose from the end of the train adversely affects safety" and requesting that the FRA affirmatively require the use of occupied cabooses on trains. 51 Fed.Reg. 17,300 (1986). The FRA, however, rejected "this line of analysis." Id. After considering the evidence and arguments presented, the agency refused to impose any caboose requirement, based on its determination that it "does not consider the lack of a caboose to be a safety issue per se." Id. at 17,301.
 
 
 5
 The question presented by this appeal is whether the FRA's actions preempt Montana's law requiring occupied cabooses. The FRSA contains its own preemption provision, preserving a limited role for the states in rail safety regulation:
 
 
 6
 A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.
 
 
 7
 45 U.S.C. Sec. 434 (emphasis added). The State of Montana concedes that its caboose law is not designed to reduce an "essentially local" safety hazard. See Brief of Appellants at 10. Consequently, the sole question before us is whether the FRA actions have "cover[ed] the subject matter" of the Montana caboose law.
 
 
 8
 For purposes of Sec. 434 of the FRSA, a state regulation "covers the same subject matter" as an FRA regulation if it addresses the same safety concerns as the FRA regulation. See, e.g., Southern Pacific Transportation Co. v. Public Utilities Comm. of California, 647 F.Supp. 1220, 1225 (N.D.Cal.1986), aff'd, 820 F.2d 1111 (9th Cir.1987) (per curiam). The Fifth Circuit's decision in Donelon v. New Orleans Terminal Co., 474 F.2d 1108, 1112 (5th Cir.1973), cert. denied, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973), is instructive. In Donelon, local authorities sought to compel a railroad to improve the condition of tracks that caused train derailments, even though the FRA had declared the tracks safe. The Fifth Circuit held that because the FRA had adopted track safety standards, a city could not take additional steps to prevent derailments. See id. at 1110-12. See also National Ass'n of Regulatory Utility Commissioners v. Coleman, 542 F.2d 11 (3d Cir.1976) (holding a state requirement that railroads file monthly accident reports preempted by an FRA regulation which also required monthly accident reports). Cf. Southern Pacific Transportation Co. v. Public Utilities Comm. of California, 820 F.2d 1111 (9th Cir.1987) (per curiam), aff'g, 647 F.Supp. 1220 (N.D.Cal.1986) (holding that a state rule regulating the distance between train tracks and surrounding buildings was not preempted by FRA regulations of track drainage and visibility, because the state regulations were designed to guarantee a safe working environment for train employees, while the federal regulations were designed simply to facilitate speedy maintenance work).
 
 
 9
 Applying this standard, we hold that Montana's caboose law is preempted by the FRA regulations permitting the use of telemetry devices as substitutes for visual inspection at the rear of trains. The new regulations reflect the FRA's judgment that telemetry devices may be substituted for occupied cabooses to perform the safety function of monitoring the operation of brakes and signals at the rear of trains. Visual inspection is no longer necessary, the FRA has decided, because electronic monitoring is an equally effecting method of assuring train safety. See 51 Fed.Reg. 17300 (1986) (use of telemetry in lieu of visual inspection of brakes "offer[s] safety benefits"); 51 Fed.Reg. 25180 (1986) (use of telemetry in lieu of visual inspection of rear-end markers "enhance[s] railroad safety").
 
 
 10
 Montana does not argue that its caboose law serves any safety functions different from those served by the FRA regulations. Instead, it argues that the FRA regulations leave open the possibility of state caboose requirements because the regulations "neither encourage nor discourage" the use of cabooses. In essence, the state's position is that because the FRA regulations are not designed to prevent or even discourage the use of cabooses on trains, Montana's caboose law is perfectly consistent with the regulations. Therefore, the state says, it is free to require trains to have cabooses.
 
 
 11
 This argument misses the point. The FRSA does not merely preempt those state laws which impair or are inconsistent with FRA regulations.[1] It preempts all state regulations aimed at the same safety concerns addressed by FRA regulations. The FRA has addressed the subject of monitoring safety conditions at the rear of trains and has concluded that telemetry devices are adequate for the purpose. Montana makes no argument that its caboose law is designed to reduce or eliminate any safety hazard not addressed by the FRA telemetry regulations. As in the Donelon case, Montana is attempting to regulate train safety problems that the FRA has already addressed.
 
 
 12
 Our conclusion is reinforced by the fact that the FRA explicitly considered and rejected a caboose requirement during the course of its deliberations on rear-train safety regulation. During the rear-end safety rulemaking proceedings, the FRA received objections from several parties who argued that cabooseless trains were unsafe. The FRA made the following response:The major objection raised by commentators opposed to the proposed rule was the opinion that elimination of a caboose from the end of the train adversely affects safety. For example, the comments of the Railway Labor Executives' Association and the United Transportation Union called for new requirements, e.g., overheated bearing/wheel detectors, train length restrictions, and dragging equipment detectors, to counteract the perceived safety detriment of cabooseless trains. FRA does not agree with this line of analysis.... [T]he FRA does not consider the lack of a caboose to be a safety issue per se. While this final rule may facilitate railroads' obtaining economic benefits from cabooseless operations, it does not in any way determine whether a caboose will or will not be used.
 
 
 13
 51 Fed.Reg. 17,300-01 (1986) (emphasis added).
 
 
 14
 The Supreme Court has held that " 'where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute,' States are not permitted to use their police power to enact such regulation." Ray v. Atlantic Richfield Co., 435 U.S. 151, 178, 98 S.Ct. 988, 1004, 55 L.Ed.2d 179 (1978) (citations omitted). Applying this principle, our court has stated that the FRA's rejection, like its adoption, of particular safety regulations may preempt state regulations on the same subject matter. In Marshall v. Burlington Northern, Inc., 720 F.2d 1149 (9th Cir.1983), we held that a state requirement that locomotives be equipped with strobe or oscillating lights was preempted by, among other things, the FRA's considered refusal to adopt such a requirement itself. The FRA had held rulemaking proceedings on the subject of strobe or oscillating lights, and had concluded they were ineffective. See id. See also Southern Pacific Transportation Co. v. Public Utilities Comm. of California, 647 F.Supp. 1220, 1226 (N.D.Cal.1986) ("[I]f after due consideration the FRA determines that a particular regulation is not justified, that determination has the same preemptive effect as the adoption of a regulation."), aff'd, 820 F.2d 1111 (9th Cir.1987) (per curiam).
 
 
 15
 These decisions are controlling in today's case. The FRA's refusal to adopt a federal caboose requirement reflects its judgment that telemetry devices are an adequate substitute for the old method of having a crew member ride at the rear of the train so he or she could make visual inspections. In its deliberations, the FRA explicitly considered whether train safety would be better served by a caboose requirement, and decided it would not. Section 434 of the Act preempts the states from second-guessing that judgment.
 
 
 16
 Montana argues that we cannot assign preemptive effect to the FRA's comments in the rulemaking proceeding because the FRA has not given "due consideration" to a caboose requirement, in the sense that it has not held a rulemaking proceeding on the question. The Act requires the FRA to follow the rulemaking procedures set forth in Sec. 553 of the Administrative Procedure Act, 5 U.S.C. Sec. 553, which generally calls for adequate notice of a proposed rule and an opportunity for parties to respond in a hearing. In this instance, the FRA has not held a rulemaking proceeding on cabooses per se, but only on electronic monitoring devices. Montana argues that because the FRA never proposed a rule regarding the appropriateness or inappropriateness of cabooses, any conclusion the FRA drew about the utility of caboose regulations cannot be given preemptive effect.
 
 
 17
 This argument is unpersuasive. The rulemaking proceedings underlying the 1986 regulations were initiated for the express purpose of considering the adequacy of electronic monitoring devices as an alternative to visual observation by crew members. Consideration of this subject necessarily encompassed the question whether electronic devices were an adequate substitute for occupied cabooses; or, put the other way around, whether cabooses were necessary to abate the hazards the electronic devices were designed to protect against. The whole point of the proceeding was to determine whether trains that relied on electronic devices instead of visual inspection would be safe. The FRA concluded that telemetry devices could do the job and that cabooses were unnecessary for train safety. Under Sec. 434, this is enough to preempt state legislation to the contrary.
 
 
 18
 The judgment is AFFIRMED.
 
 
 
 [1]
 Which is not to deny that Montana's law interferes with the operation of the FRA regulations. It may well do so; our point is that such interference need not be shown for preemption to occur