The **BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Soo Line Railroad Company, Union Pacific Railroad Company, and Wisconsin Central, Ltd., Plaintiffs,**

v.

James E. **DOYLE, Attorney General of Wisconsin, E. Michael McCann, District Attorney of Milwaukee County, Thomas L. Storm, District Attorney of Fond du Lac County, and Daniel Blank, District Attorney of Douglas County, Defendants.**

No. 97–C–1382.

United States District Court,
E.D. Wisconsin.

Oct. 28, 1998.

930

Jon P. Axelrod, DeWitt, Ross & Stevens, Madison, WI, Ronald M. Johnson, Charles L. Warren, Risa B. Cherry, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for Burlington Northern & Santa Fe Railway Company, Soo Line Railroad Company, Union Pacific Railroad Company, Wisconsin Central, Ltd., plaintiffs.

Lawrence M. Mann, Alper Mann & Weisbaum, Washington, DC, Marilyn Townsend, Townsend Law Office, Madison, WI, for United Transportation Union, intervenor plaintiff.

James E. Doyle, Jr., Susan K. Ullman, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for James E. Doyle, E. Michael McCann, Thomas L. Storm, David Blank, defendants.

Thomas L. Smallwood, Borgelt Powell Peterson & Frauen, Milwaukee, WI, for Association of American Railroads, American Short Line & Regional Railroad Association, amicus.

## ORDER

STADTMUELLER, Chief Judge.

On December 31, 1997, plaintiffs Burlington Northern and Santa Fe Railway Company, Soo Line Railroad Company, Union Pacific Railroad Company, and Wisconsin Central, Ltd. sued defendants James E. Doyle, E. Michael McCann, Thomas Storm, and Daniel Blank, seeking invalidation of Wisconsin's recently-passed "two-person crew" law because Federal Railroad Administration (FRA) regulations allegedly preempt the same safety concerns. Defendants moved to dismiss counts one, two, and three of the complaint and moved for summary judgment on the other counts, and intervenor United Transportation Union also moved for summary judgment. Plaintiffs responded with their own motion for summary judgment, and several railroad associations filed an amicus brief. The parties have since stipulated and the court ordered that all claims in plaintiffs' complaint other than counts one, two, and three are dismissed without prejudice. The parties have fully briefed these motions, and the court will now consider them.

## BACKGROUND

Recently, railroad companies have been attempting to shrink the size of the crews that operate their trains and locomotives. Some companies have used one-person crews for (1) moving locomotives without cars attached (known generally as "light" movements) within yards or terminal areas for purposes of servicing and repairing locomotives (known as "hostling"); (2) operating "helper" locomotives that help trains ascend steep inclines; and (3) moving trains between terminals or between terminals and customer facilities ("over-the-road" operations).

Apparently, it is the third use of one-person crews that has sparked controversy. In 1996, plaintiff Wisconsin Central, Ltd. (WCL) began using one-person crews in over-the-road operations. In response, intervenor United Transportation Union (UTU) petitioned the FRA for an emergency order prohibiting WCL from using one-person trains, citing "an imminent hazard to the safety of the public." Plaintiffs' Ex. B. The FRA then began to investigate WCL's rules and procedures governing one-person over-the-road operations, and, at the FRA's request, WCL postponed planned additional over-the-road one-person operations during this review.

In September 1996, WCL notified the FRA of its desire to use remote-controlled locomotives at two of its rail yards. The UTU again petitioned the FRA for an emergency order, challenging the safety of such operations and asking the FRA to prohibit all railroads from operating locomotives or trains by remote control.

The FRA asked WCL to submit an action plan regarding operating standards for these new operations, which WCL did. The FRA "thoroughly reviewed the action plan and other submissions by [WCL] on the use of one-person crews, but [sought] to develop additional facts as part of the basis for its decisions on the UTU petitions and on whether there is a need for rulemaking on these subjects." 61 Fed.Reg. 58736, 58737 (1996). The FRA noted that the use of remote-controlled locomotives is "closely related" to the one-person crew issue, "since the [WCL] action plan envisions that an engineer working alone would use a remote control in numerous situations." Id. The FRA

held a hearing on these issues in Appleton, Wisconsin on December 4 and 5, 1996.

At the hearing, representatives of the railroad industry testified about the safety of one-person crews and remote-controlled locomotives, and representatives of rail labor testified that these operations were unsafe and must be prohibited. Wisconsin State Representative John Dobyns, who would later sponsor the legislation that became Wis.Stat. § 192.25, also testified at the hearings and submitted a letter expressing his concerns about the safety of one-person crews and remote-controlled locomotive operations.

The FRA did not rule on UTU's petitions, but, as plaintiffs admit, the FRA "continues to have both issues under review." Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (hereinafter "Plaintiff's Summary Judgment Brief") at 8. The FRA's only reaction to the hearings to date is a January 10, 1997 letter to WCL stating that the "FRA is reviewing the submitted information to determine the appropriate course of action." Plaintiffs' Ex. FF. The FRA stated that although it did not view WCL's action plan "as definitive in addressing safety issues surrounding the use of one-person crews, we do expect [WCL] to conform to all of those conditions as an interim measure while FRA is completing its review of all docket materials and determining the proper course of action." Id. The FRA did not completely bar WCL from using one-person crews in the interim, but stated that "expansion of one-person operations beyond those occurring now should continue to be held in abeyance until final FRA action is taken." Id. The FRA did, however, bar WCL from using remote-controlled locomotives "until we have had an opportunity to fully review safety information submitted to the agency." Id.

As of October 1998, the FRA still has not taken final action regarding the issues of one-person crews and remote-controlled locomotives, but it has published several notices in the Federal Register giving notice of its "propos[als] to promulgate an interim final rule" to "prohibit, except in carefully controlled instances, the use of one-person operations" and to "conduct a nationwide pilot

program on remote control operations." 63 Fed.Reg. 22429, 22433 (1998). The FRA did not cite any current federal orders or regulations addressing these topics, but only noted that an "Informal Safety Inquiry concerning a proposal by Wisconsin Central Ltd. to expand its use of one-person crew and remote control operations was held by FRA on December 4 and 5, 1996." *Id.* (citing 61 Fed. Reg. 58736 (1996)).

While the FRA has been reviewing these issues, it also has been conducting a broader review of all of WCL's operating practices due to WCL's poor safety record: "[T]he railroad's accident rate for 1996 is nearly double all other U.S. railroads and 72 percent greater than all other railroads in its category. This, combined with two derailments in December and January in Riplinger, Wis., led the FRA to conclude that strict remedial measures were necessary immediately." Currie Aff., Ex. 3. On February 8, 1997, the FRA and WCL entered into a Safety Compliance Agreement addressing a number of WCL's operations, including one-person crews and remote-controlled locomotives:

### IV. One Person Train Crew; Remote Control Locomotive

13. Except for movements of light locomotives, Wisconsin Central will not use one-person train crews during the pendency of this Agreement.

14. Wisconsin Central will not operate locomotives by use of remote control devices during the pendency of this Agreement. Use of remote control or one-person train crews exclusively in plant railroad operations, (*e.g.*, operations at Port Inland, Michigan) over which FRA has not asserted regulatory jurisdiction, is not affected by this Agreement. Use of remote control for distributive power purposes is not affected by this Agreement.

Currie Aff.,.Ex. 3.

This Agreement remained in effect for 12 months, from February 7, 1997, until February 6, 1998, when the FRA and WCL signed a new Safety Compliance Agreement. Currie Aff., Ex. 4. The second Agreement noted and praised WCL's compliance with the first Agreement, and it accordingly modified slightly the terms of WCL's use of one-person crews and remote-controlled locomotives:

### V. One Person Train Crew; Remote Control Locomotive

9. Wisconsin Central will not use one-person train crews during the pendency of this Agreement, except as follows:

a. movements of light locomotives including helper engines;

b. in plant railroad operations, (*e.g.*, operations at Port Inland, Michigan) over which FRA has not asserted regulatory jurisdiction; and,

c. operations where a qualified locomotive engineer in the cab of a locomotive is assisted by a second crew member assigned to accompany said engineer and who may travel with the train in a motor vehicle at certain specific locations.

10. Wisconsin Central will not operate locomotives by the use of remote control devices during the pendency of this Agreement. If, during the pendency of this Agreement, FRA publishes guidelines governing remote control operations, Wisconsin Central will be authorized to operate locomotives by use of remote control devices only in accordance with those guidelines. Use of remote control in plant railroad operations, (*e.g.*, operations at Port Inland, Michigan) over which FRA has not asserted regulatory jurisdiction, is not affected by this Agreement.

Currie Aff., Ex. 4. The second Agreement also is limited in duration to 12 months (it will expire in February 1999).

Meanwhile, a few weeks after State Representative Dobyns testified at the Appleton hearings, he introduced Assembly Bill 35, which was enacted and became Wis.Stat. 192.25 on December 15, 1997. The statute requires a minimum of two employees for all train crews, one of which must be a "certified railroad locomotive engineer" under FRA regulations (the other may be either a certified engineer or a "qualified railroad trainman"):

**192.25. Railroad train crews.** (1) In this section:

(a) "Certified railroad locomotive engineer" means a person certified under 49 CFR 240 as a train service engineer, locomotive servicing engineer or student engineer.

(b) "Qualified railroad trainman" means a person who has successfully completed a railroad carrier's training program and passed an examination on railroad operation rules.

(2) No person operating or controlling any railroad, as defined in s. 85.01(5), may allow the operation of any railroad train or locomotive in this state unless the railroad train or locomotive has a crew of at least 2 individuals. One of the individuals shall be a certified railroad locomotive engineer. The other individual shall be either a certified railroad locomotive engineer or a qualified railroad trainman. A certified railroad locomotive engineer shall operate the control locomotive at all times that the railroad train or locomotive is in motion. The other crew member may dismount the railroad train or locomotive when necessary to perform switching activities and other duties in the course of his or her job.

(3)(a) The office, by rule, may grant an exception to sub. (2) if the office determines that the exception will not endanger the life or property of any person.

(b) Subsection (2) does not apply to the extent that it is contrary to or inconsistent with a regulation or order of the federal railroad administration.

(4) Any person who violates sub. (2) may be required to forfeit not less than $25 nor more than $100 for a first offense, not less than $100 nor more than $500 for a 2nd offense committed within 3 years, and not less than $500 nor more than $1,000 for a 3rd offense committed within 3 years.

Wis.Stat. § 192.25.

Plaintiffs filed this action two weeks after the enactment of Wis.Stat. § 192.25, contend-ing that the statute (1) is preempted by federal law; (2) imposes an unconstitutional burden on interstate commerce; and (3) violates various provisions of the Wisconsin Constitution and Wisconsin Statutes. As noted above, plaintiffs dropped the last two claims but still argue preemption. Plaintiffs also seek injunctive relief against enforcement of Wis.Stat. § 192.25. Pending the outcome of this action (or until December 31, 1998, or further FRA action, "whichever comes sooner"), the parties agreed that defendants will stay enforcement of the statute with regard to certain operations similar to those expressed in the second WCL–FRA Safety Compliance Agreement. Defendants' Ex. 7.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[1] In deciding a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. E.g., Fisher v. Transco Servs. Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir.1992). With respect to the nonmoving party's burden, the Federal Rules of Civil Procedure provide that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party

---

1. It is not clear to the court why defendants moved to dismiss counts one through three under Fed.R.Civ.P. 12(b)(6) rather than moving for summary judgment, as they have submitted evidence outside the pleadings in support of their motion. Because the court will consider the evidence submitted by defendants, the court must treat defendants' motion as one for summary judgment. Fed.R.Civ.P. 12(b). Although under Rule 12(b) all parties must be given "reasonable opportunity to present all material made pertinent" by considering the motion as one for summary judgment, the parties already have submitted numerous exhibits and affidavits in this case; thus, the court may treat defendants' motion as one for summary judgment without further notice. See, e.g., Bohac v. West, 85 F.3d 306, 312 (7th Cir.1996).

does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

## B. Preemption Standard

 "Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (citing, inter alia, U.S. Const. art. VI, cl. 2). If the federal statute at issue "contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause...." *Id.* at 664, 113 S.Ct. 1732. In this case, the federal statute at issue is the preemption clause of the Federal Rail Safety Act:

> Laws, regulations and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety *until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.*

49 U.S.C. § 20106 (emphasis added). The Supreme Court has defined the word "covering" as used in this context:

> To prevail on the claim that the regulations have preemptive effect, petitioner must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.

*Easterwood*, 507 U.S. at 664, 113 S.Ct. 1732. The Court also held that section 20106 "displays considerable solicitude for state law," *id.* at 665, 113 S.Ct. 1732, and that there is thus a "presumption against preemption." *Id.* at 668, 113 S.Ct. 1732.

In *Easterwood*, the Supreme Court held that FRA regulations setting maximum train speeds "covered" the subject matter of train speed (and thus preempted the plaintiff's

state law excessive-speed claim), even though the regulations did not specifically address lower speeds in particular situations. *Id.* at 673–675, 113 S.Ct. 1732. However, the Court also held that federal regulations setting forth general mandates concerning the safety of grade crossings did not preempt a state law negligence action alleging inadequate grade crossing safety measures. *Id.* at 665–670, 113 S.Ct. 1732. The Court distinguished between federal regulations that are merely *descriptive*, which do not preempt state law, and those that are *prescriptive* or that affirmatively *require* (or permit) certain safety measures (those that are "set with safety concerns already in mind"), which do preempt state law. *Id.* at 669–671, 113 S.Ct. 1732.

 Thus, the court must analyze from a "practical standpoint," *Missouri Pac. R.R. v. Railroad Comm'n of Texas*, 833 F.2d 570, 575 (5th Cir.1987), whether the state law is "aimed at the same safety concerns addressed by FRA regulations." *Burlington N. R. Co. v. Montana*, 880 F.2d 1104, 1106 (9th Cir.1989). For example, in *Burlington*, the state claimed that its law requiring a caboose was not preempted by federal regulations allowing the use of a telemetry device instead, because the federal regulations "neither encourage[d] nor discourage[d]" the use of cabooses. *Id.* The Ninth Circuit disagreed, holding that "Montana is attempting to regulate train safety problems that the FRA has already addressed." *Id.* The court's conclusion was "reinforced by the fact that the FRA explicitly considered and rejected a caboose requirement," as expressed in the agency's published final rule allowing telemetry devices. *Id.* at 1106–07 (citing 51 Fed. Reg. 17300 (1986)).[2]

 Thus, the FRA need not necessarily choose to regulate the same safety concern to preempt a state's action, but the FRA must at least "explicitly consider[ ] and reject[ ]" such regulation, *Burlington*, 880 F.2d at 1106, or make an "affirmative conclusion" not to regulate. *Missouri Pac. R. Co.*, 850 F.2d

---

**2.** The other courts deciding the "caboose" cases cited by plaintiffs also relied on the same published final rule in finding preemption of state caboose requirements. *See Burlington Northern* *R.R. Co. v. Minnesota*, 882 F.2d 1349, 1353 (8th Cir.1989); *Missouri Pac. R.R. v. Railroad Comm'n of Texas*, 850 F.2d 264, 267 (5th Cir. 1988).

at 267–68. The first *Missouri Pacific* court expressed the difference as that between the FRA saying, "we haven't looked at [this issue] yet," which does not preempt, and the FRA saying, "we haven't done anything because we have determined it is appropriate to do nothing," which does preempt. 833 F.2d at 576.

Therefore, the question before this court is simple: Has the FRA prescribed a regulation or issued an order aimed at the same safety concerns addressed by Wis.Stat. § 192.25? The safety concerns addressed by section 192.25 appear to be those posed by the use of one-person crews and remote-controlled locomotives.[3] Although the language of the statute is worded more broadly, it appears to be aimed at the safety concerns posed by the use of one-person crews and remote control specifically in longer-distance or "over-the-road" operations. A Bill Summary provided by the Assembly Republican Caucus shows the connection between Wis. Stat. § 192.25 and these safety issues:

> Current law contains numerous regulations regarding the operation of railroads. Current law does not, however, establish the number of personnel required to operate a railroad train.
> Recently, Wisconsin Central Ltd. implemented one person crews on railroad trains in Wisconsin. In reaction to complaints, the Federal Railroad Administration ordered Wisconsin Central to stop this practice for one year. During this time they are reviewing the situation.

Defendants' Ex. 13 (Assembly Republican Caucus Policy Summary of 1997—Assembly Bill 35).

The two-person crew law was thus aimed at the same safety concerns expressed by the FRA when it investigated WCL's plan to expand its use of one-person crews to "over-the-road" operations:

> We are aware the other railroads, as well as your own, currently operate one-person

trains. For the most part, these operations are short, slow trains. You intend, however, to move mixed freight over long distances in these four routes. As you no doubt realize, your proposed operations are novel, and pose many complex problems. Although there are no available data proving that one-person crews are unsafe, there are also no data showing operations of the type you propose to be safe. FRA has identified a number of safety issues arising from your proposal to expand [WCL]'s one-person operations.

Currie Aff.Ex. 1 (May 8, 1996 letter from FRA Deputy Administrator to President of WCL). The FRA extensively listed these safety concerns in its letter by asking, for example, "How will the issue of crew fatigue be addressed in this setting since no other crew members are on board to observe the engineer's actions?" *Id.* Because the enactment of Wis.Stat. § 192.25 appears to be a direct response to the safety concerns posed by the FRA in its investigation of WCL, the court must determine whether FRA "regulations" and "orders" already address the same concerns posed by the FRA's investigation of WCL and thus addressed by the enactment of Wis.Stat. § 192.25.

## C. Federal Orders or Regulations Addressing Safety Concerns Posed by One–Person Crews and Remote–Controlled Locomotives

Plaintiffs point to several federal actions that they contend constitute "orders" or "regulations" in which the FRA allegedly addressed the safety concerns posed by one-person crews and remote-controlled locomotives. The court will examine each federal action to determine whether the actions are "orders" or "regulations" within the meaning of 49 U.S.C. § 20106 and whether the actions address the safety concerns posed by one-person crews and remote-controlled locomotive operations. First, however, the court

---

**3.** Plaintiffs argue that the "safety concerns" the court should consider are the general ones expressed by Representative Dobyns in his testimony to the state highways and transportation committee: "[t]he safety of our driving public, railroad employees and our businesses and industries." Plaintiffs' Ex. O. Plaintiffs argue that these same concerns are already addressed by

FRA regulations explaining that the FRA's "three-fold objective" is "protecting passengers, persons along the right-of-way, and railroad employees." 43 Fed.Reg. 10583, 10585 (1978). The court believes that the plaintiffs' over-broad interpretation of "safety concerns" would result in the preemption of *any* state law directed at railroad safety, an untenable result.

will address whether the certification and training standards in the Wisconsin statute are preempted by federal orders or regulations aimed at the same safety concerns.

### 1. FRA Regulations Regarding Engineer and Trainmen Qualifications

The Wisconsin two-person crew statute requires that only a "certified railroad locomotive engineer" may operate a control locomotive while the locomotive or train is in motion. Wis.Stat. § 192.25(2). The statute defines "certified railroad locomotive engineer" as "a person certified under 49 CFR 240 as a train service engineer, locomotive servicing engineer or student engineer." Wis.Stat. § 192.25(1)(a). The statute also requires either two engineers or one engineer and one "qualified railroad trainman" to constitute the two-person crew. Wis.Stat. § 192.25(2). The statute defines "qualified railroad trainman" as "a person who has successfully completed a railroad carrier's training program and passed an examination on railroad operation rules." Wis.Stat. § 192.25(1)(a).

Plaintiffs argue that FRA regulations state the exact same requirements (as appears obvious from the Wisconsin statute's reference to FRA regulations); therefore, the Wisconsin statute covers the same subject matter as the FRA regulations and is thus preempted. *See, e.g., Burlington,* 880 F.2d at 1106 (holding that section 20106 "does not merely preempt those state laws which impair or are inconsistent with FRA regulations"); *see also National Ass'n of Regulatory Util. Comm'rs v. Coleman,* 542 F.2d 11, 15 (3d Cir.1976) (finding preemption where state accident reporting requirements were "largely duplicative" of federal reporting requirements).

Defendants admit that "subsections (1)(a) and (b) of the Wisconsin statute, in effect, incorporate federal certification and training standards into the Wisconsin law," but respond that "[w]hile it is true that a state law that is consistent with federal rules may be preempted, it does not follow that a state law is invalid if it imposes requirements *identical* to those imposed by federal regulations." Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment at 15 (emphasis in original). Defendants claim that there is thus "no concrete controversy re-

garding those provisions and the plaintiffs do not even have standing to challenge them." *Id.* at 16.

█ Whichever way the court decides this particular issue, the result is exactly the same. If the court finds preemption, subsections (1)(a) and (1)(b) of the Wisconsin statute will be held invalid, and railroads will continue to train and certify trainmen and engineers according to federal standards stated in 49 C.F.R. 217 and 240. If the court finds no preemption, railroads will continue to train and certify trainmen and engineers according to federal standards stated in 49 C.F.R. 217 and 240. However, because the court must invalidate state requirements that are "duplicative" of federal regulations and that are "aimed at the same safety concerns," the court holds that subsection (1) of 192.25 is preempted by federal requirements.

Plaintiffs also argue that FRA regulations allow a person who is not a certified locomotive engineer to move locomotives "within the confines of a locomotive repair or servicing area" or "for distances of less than 100 feet ... for inspection or maintenance purposes." 49 C.F.R. 240.7 (1997). These exceptions directly conflict with the Wisconsin statute, which requires that a "certified railroad locomotive engineer shall operate the control locomotive at all times that the railroad train or locomotive is in motion." Wis.Stat. § 192.25(1). The FRA clearly considered the safety issues posed by letting a non-engineer operate a moving locomotive and affirmatively decided to permit non-engineers to operate moving locomotives in these two situations:

FRA also proposes to exclude two types of functions frequently performed on many railroads. This exclusion is intended to permit employees to move locomotives very short distances for inspection or maintenance purposes. FRA has concluded that this function is so minimal as not to warrant coverage under this proposal. Thus, FRA proposes to exclude employees required to operate a locomotive as an incidental aspect of their inspection, maintenance, and servicing duties. This exclusion would apply in two settings. The first involves individuals who operate locomotives only within the confines of a locomotive servicing facility isolated from general operations in accordance with the blue sig-

nal regulations (49 CFR 218.29). FRA believes that these limitations are sufficient to provide for the safety of operations.... Second, FRA proposes to permit an employee to move a locomotive for a distance of not more than 100 feet when necessary to perform an inspection or maintenance task outside a locomotive servicing facility.

54 Fed.Reg. 50890, 50893 (1989).

 Because the Wisconsin statute takes pains to ensure that a certified engineer locomotive is at the controls every time a train or locomotive moves, this provision is aimed at the same safety concerns considered by the FRA when it decided to allow non-engineers to be at the controls of moving locomotives. Therefore, the court holds that the Wisconsin statute's requirement that a certified railroad engineer locomotive must be at the controls every time a train moves is preempted by federal regulations.[4]

As a result, the only part of the Wisconsin statute left standing is the two-person requirement itself, which prohibits "the operation of any railroad train or locomotive in this state unless the railroad train or locomotive has a crew of at least 2 individuals." Wis. Stat. § 192.25(2). The remainder of subsection (2) and the entirety of subsection (1) are preempted by federal law pursuant to 49 U.S.C. § 20106. The court will now consider whether Wisconsin's two-person crew requirement is also preempted by federal orders or regulations aimed at the same safety concerns.

### 2. FRA–WCL Safety Compliance Agreements

Nowhere does the FRA more explicitly address the safety concerns posed by one-person crews and remote-controlled locomotives than in the Safety Compliance Agreements it reached with WCL. Therefore, the court will look to these Agreements first in determining whether the FRA has "cover[ed] the subject matter" of Wis.Stat. § 192.25. If the Agreements are indeed "regulations" or "orders" within the meaning of 49 U.S.C. § 20106, they may well preempt the Wisconsin statute because of their focus on the safety of one-person crews and remote-controlled locomotives, the same safety concerns addressed by the Wisconsin statute.

Plaintiffs contend that because the Agreements allegedly may be considered "orders" under the Administrative Procedure Act (APA), they must also be "orders" under section 20106. Plaintiffs cite several cases in which courts contemplated that an FRA letter to a railroad or a railroad association could be a "final agency action" under the APA and 28 U.S.C. § 2342(7). *Atchison, Topeka, and Santa Fe Ry. Co. v. Pena,* 44 F.3d 437, 440–42 (7th Cir.1994), *aff'd, Brotherhood of Locomotive Eng'rs v. Atchison, Topeka, and Santa Fe Ry. Co.,* 516 U.S. 152, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996); *see also United Transp. Union v. Lewis,* 711 F.2d 233 (D.C.Cir.1983). Apparently, no court has addressed the issue of the definition of "order" or "regulation" under section 20106.

The court finds plaintiffs' argument and citations unconvincing. In the *Atchison* case, the Seventh Circuit did not focus on the form of the FRA's actions, but instead emphasized that the actions constituted "final agency action" because they "demonstrate[d] that the agency had completed its decisionmaking." 44 F.3d at 441 n. 2. Similarly, the district court in *United Transportation Union* refused to consider the parties' cross-motions for summary judgment until the FRA officially published a notice terminating the FRA's inquiry into that issue, which the D.C. Circuit said "constituted such final agency action." 711 F.2d at 241 n. 23.[5] The APA

---

4. However, federal regulations allow non-engineers to move locomotives only "within the confines of a locomotive repair or servicing area" or "for distances of less than 100 feet ... for inspection or maintenance purposes." 49 C.F.R. 240.7 (1997). Other than these two situations, federal law and state law both require a certified locomotive engineer to be at the controls of a moving locomotive. Therefore, other than the two exceptions, it does not really matter whether there is preemption or not. However, as above, the court finds preemption because the state requirement is "duplicative" and is "aimed at the same safety concerns."

5. The plaintiffs also cite *Port Authority Trans–Hudson Corp. v. FRA,* 132 F.3d 1482, 1997 WL 812448, No. 97–1103, 1997 U.S.App. LEXIS 37565 (D.C.Cir. Dec. 15, 1997). The *Port Authority* case, an unpublished three-paragraph decision denying review of an FRA determination, did not discuss the definition of "order" or "reg-

also defines an "order" as a "final disposition." *See* 5 U.S.C. § 551(6).[6]

■ In contrast, the first Agreement here explicitly stated that it only remained in effect for 12 months, and the second Agreement changed the terms of the first Agreement and also stated that it would remain in effect for 12 months. Yearly settlement agreements that change based on a party's performance under the prior agreement are not of the character of a "final agency action." [7] Furthermore, the court does not see how a temporary settlement with a private company can constitute a binding "order" or "regulation" any more than a private settlement between parties in this court can constitute a final decision or order of the court binding other parties. Therefore, the court holds that the WCL–FRA Safety Compliance Agreements are not "orders" or "regulations" having preemptive effect under 49 U.S.C. § 20106.

### 3. FRA's Alleged Denial of UTU's Emergency Petitions

■ Plaintiffs also point to the FRA's alleged decision not to grant UTU's emergency petitions asking the FRA to bar the use of one-person crews and remote-controlled locomotives as evidence that the FRA has declined to regulate these safety issues. However, plaintiffs have not cited any evidence in the record showing that the FRA ever ruled on these petitions at all. In fact, plaintiffs' brief in support of their summary judgment motion misleadingly states that the "FRA declined to ban the use of one-person crews, as requested by UTU," Plaintiffs' Summary Judgment Brief at 6, while the affidavit plaintiffs cite actually states, "To the best of my knowledge, the FRA never actually ruled on the UTU's petition." Currie Aff. at 7. Therefore, the FRA's alleged action or lack

thereof regarding the emergency petitions does not preempt the Wisconsin statute.

### 4. FRA's Suspended Utility Employee Rule Amendment

In 1992, the FRA issued a notice of proposed rulemaking regarding whether "utility" employees needed to have "blue signal" protection when working with a train or yard crew. 57 Fed.Reg. 41454 (1992). The FRA also stated that it was "concerned that protection provided for one-person assignments (i.e., hostlers or other unaccompanied engineers) be consistent with safety and efficiency," and it thus invited comments on that subject. *Id.* at 41457. In its final rule, the FRA allowed utility employees to join train or yard crews using alternative safety procedures, but it stated in the rule preamble that it did not allow a "single locomotive engineer in helper service or a single hostler [to] take advantage of the exclusion from blue signal protection unless joined by a utility employee." 58 Fed.Reg. 43287, 43291 (1993).

The railroads petitioned for reconsideration, arguing that the rule text did not seem to bar the use of one-person crews. The FRA agreed, stating that the utility employee rule it had promulgated was unrelated to the one-person crew issue:

> Although AAR is correct that the utility employee rule did not, on its face, preclude its application to one-member crews, application of utility protection to such crews would not be logical. The utility employee rule presumes the presence of a permanent crew to which the utility crew member becomes temporarily attached for specific purposes.

60 Fed.Reg. 11047 (1995). The FRA did, however, also state that it "remains con-

---

ulation" in any context, but merely cited a letter from the FRA in support of its decision. *See* 1997 U.S.App. LEXIS 37565 at *3. Therefore, the court does not find this case persuasive or even relevant.

**6.** In addition, in the cases cited by plaintiffs in which courts found preemption, the FRA had published final orders or regulations in the Code of Federal Regulations or the Federal Register addressing the same safety concerns. *See supra* Section B and note 2. Plaintiffs have not cited any cases in which courts found preemption

based on unpublished "safety agreements" between the FRA and private parties.

**7.** Plaintiffs argue in their reply brief that the Agreements contain a "definitive statement of the agency's position," as is required to be considered "final agency action." *See Atchison,* 44 F.3d at 441. The court does not see how the terms of the Agreements are definitive statements of FRA's position when the terms change between the Agreements because of WCL's compliance or noncompliance with the terms of the previous Agreement.

cerned with the unique risk faced by lone engineers," *id.,* and therefore it amended the rule to prohibit engineers working alone from working on rolling equipment without blue signal protection, unless several safety requirements were met. *Id.* at 11048. The FRA "invite[d] comment on this amendment before it [took] effect," *id.,* and the railroads voiced their opposition. In response, the FRA suspended the one-person crew amendment as of the date it was to become effective and reopened the comment period. 60 Fed.Reg. 30469 (1995).

Apparently, the amendment is still suspended, and the comment period remains open. Thus, the amendment does not appear to be a "definitive statement of the agency's position," as is required to be considered "final agency action." *See Atchison,* 44 F.3d at 441. Therefore, the court does not find preemption on these grounds.

### 5. FRA Test Program for Remote Control

In 1994, the FRA published a notice of a test program and a public hearing involving the use of remote-controlled locomotives. 59 Fed.Reg. 59826. The FRA allowed railroads to use remote control *"only* if they participate[d] in the long-term test" and only if they enrolled in the program with the FRA. *Id.* at 59827 (emphasis added). The regulation stated that because remote control use would not technically comply with federal railroad safety standards, enrollment in the test program would "be necessary for waiver of those provisions." *Id.* There is no other evidence in the record concerning this "test program" or whether the program was ever implemented.

As defendants note, none of the plaintiffs allege that they enrolled or participated in this test program; therefore, defendants argue, the regulation does not apply to plaintiffs. Plaintiffs, however, cite the "Standard Operating Procedures" listed by the FRA regarding remote control, which include references to one-person crews as well, *id.* at 59828, and deride defendants for "completely miss[ing] the mark" because these standards are "applicable to the entire industry." Plaintiffs' Summary Judgment Brief at 21; *see also* Plaintiffs' Reply Brief at 11 (stating that "[d]efendants do not deny that those

regulations are regulations of general applicability and are still in effect").

Again, it is the plaintiffs who have completely missed the mark. The regulation states just below the "Standard Operating Procedures" heading that "W & LE [Wheeling & Lake Erie Railway Company] shall establish written standard operating procedures tailored to its remote-control operation and shall include the following provisions: . . . ." *Id.* The FRA was in fact very careful to limit the applicability of these provisions to Wheeling & Lake Erie Railway Company:

> While FRA has extensively reviewed the remote-control operations of the W & LE, other railroads throughout the country have begun to use remote-control technologies without similar FRA review. Because there are different remote-control transmitters and receivers made by a number of manufacturers and various railroads use those remote-control devices in various operational settings, conditions associated with W & LE's use of the devices may or may not be appropriate to other carriers.

*Id.* at 59827.

Plaintiffs cannot claim preemption on the basis of regulations or orders that do not apply to them. *Cf. Easterwood,* 507 U.S. at 670, 113 S.Ct. 1732 (holding that "when [federal regulations] are applicable, state tort law is pre-empted. However, petitioner has failed to establish that the regulations apply to these cases, and hence we find respondent's grade crossing claim is not pre-empted"). Therefore, the court holds that the FRA's test program for remote-controlled locomotives does not preempt Wis.Stat. § 192.25.

### 6. FRA Definition of "Train or Yard Crew"

In issuing a final rule regarding safety procedures required to protect "utility" employees, the FRA defined "train or yard crew" as

> one or more railroad employees assigned a controlling locomotive, under the charge and control of one crew member; called to perform service covered by Section 2 of the Hours of Service Act; involved with

the train or yard movement of railroad rolling equipment they are to work with as an operating crew; reporting and working together as a unit that remains in close contact if more than one employee; and subject to the railroad operating rules and program of operational tests and inspections required in §§ 217.9 and 217.11 of this chapter.

58 Fed.Reg. 43287, 43292. Plaintiffs argue that this definition "reflects an affirmative judgment by FRA that one-person crews can be utilized by railroads in the same manner as crews with more than one employee." Plaintiffs' Summary Judgment Brief at 19. However, the FRA stated that it included this definition to respond to concerns about which employees required blue signal protection:

Commenters representing rail labor have raised the issue that this rule may encourage the transfer of work from "workers," who require blue signal protection, to "train or yard crews" who do not require such protection. In the final rule, a definition for "train or yard crew" is added. *A train or yard crew,* a term used in the 1976 amendment to federal railroad safety laws, 45 U.S.C. 431(g)(1), *is being defined in order to clarify which railroad employees may be excluded from blue signal protection.*

*Id.* at 43290 (emphasis added). There is no indication that the FRA decided to define "train or yard crew" to address the safety issues posed by one-member crews and remote-controlled locomotives. As noted above, federal regulations must do more than merely "touch upon" or "relate to" the same subject matter, *Easterwood,* 507 U.S. at 664, 113 S.Ct. 1732; they must affirmatively prescribe safety measures, rather than merely describe them. *Id.* at 669–671, 113 S.Ct. 1732. Thus, the court holds that the FRA's definition of "train or yard crew" does not preempt Wis.Stat. § 192.25.

The court has reviewed each alleged FRA "regulation" or "order" allegedly aimed at the same safety concerns addressed by the Wisconsin statute and concludes that no FRA regulation or order is aimed at the same safety concerns addressed by the Wisconsin statute. As noted previously, the safety concerns addressed by the Wisconsin statute

appear to be those posed by the use of one-person crews and remote control specifically in longer-distance or "over-the-road" operations. However, the statute is worded more broadly so as to require two-person crews for light locomotive movements such as "helper" movements and "hostling" movements as well. The court thus must examine whether FRA regulations or orders address the issue of the number of crew required for these movements.

Apparently, the only FRA pronouncement on the topic of the number of crew members that must be used in helper or hostler service was the suspended utility employee rule, for which the FRA had "requested comment on the protection needed for a single locomotive engineer performing helper or hostler service" and had then amended the rule to prohibit engineers working alone from working on rolling equipment without blue signal protection, unless several safety requirements were met. 60 Fed.Reg. 11047 (1995). However, as noted above, the FRA suspended this one-person crew amendment as of the date it was to become effective and reopened the comment period. 60 Fed.Reg. 30469 (1995); *see supra* Section C.4.

As noted above, the amendment apparently is still suspended, and the comment period remains open. Thus, the amendment does not appear to be a "definitive statement of the agency's position," as is required to be considered "final agency action." *See Atchison,* 44 F.3d at 441. Although railroads may have used one-person crews for helping and hostling in the past, the FRA apparently has not considered the safety issues posed by using one-person crews for these operations in a final "order" or "regulation." Therefore, the court does not find preemption on these grounds, and the Wisconsin statute's two-person crew requirement is not preempted under 49 U.S.C. § 20106.

## CONCLUSION

The court concludes that Wis.Stat. § 192.25 is preempted by FRA regulations or orders except insofar as it prohibits "the operation of any railroad train or locomotive in this state unless the railroad train or locomotive has a crew of at least 2 individu-

als." Wis.Stat. § 192.25(2). Therefore, the court will grant in part and deny in part plaintiffs' and defendants' motions for summary judgment. The court also will deny as moot the motions addressing counts other than counts one, two, and three and will grant the railroad associations' motion for leave to file a brief as amicus curiae.

Accordingly,

**IT IS ORDERED** that defendants' motion to dismiss counts 1, 2, and 3 of the complaint, which the court considers as a motion for summary judgment pursuant to Fed.R.Civ.P. 56, be and the same is hereby **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment on count 4 and motion to dismiss counts 5, 6, 7, and 8 be and the same are hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that intervenor United Transportation Union's motion for summary judgment be and the same is hereby **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment be and the same is hereby **GRANTED** in part and **DENIED** in part; and

**IT IS FURTHER ORDERED** that the Association of American Railroads and American Short Line and Regional Railroad Association's motion for leave to file a brief as amicus curiae be and the same is hereby **GRANTED**.

The clerk is directed to enter judgment accordingly.